[Crim. No. 3188.   First Dist., Div. Two.   Nov. 20, 1956.]

THE PEOPLE, Respondent, v. LEON HARRIS, Appellant.

Allan L. Sapiro, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of conviction after trial by the court. Appellant Leon Harris was found guilty as charged of a violation of section 11500, Health and Safety Code, possession of marijuana. The allegation of a prior conviction in the State of Texas for possession of narcotics was found to be true.

Appellant was found guilty on June 3, 1955, and on July 26, 1955, a motion for new trial was granted. The case was again tried by the court without a jury and appellant again found to be guilty as charged.

Leon Harris was arrested by Officer Giannini at approximately 2:15 or 2:20 a. m., April 17, 1955. Officers Giannini and Hess were on foot patrol duty when they observed appellant in the doorway of a liquor store at the corner of Fillmore and McAllister Streets. He was talking with another person, and every few moments would leave the doorway, look down the street and return to the doorway. The officers testified that he was acting very suspiciously.

Prior to this occasion, Officer Giannini had been told by an informant, that Harris was a known thief, that he was a possible booster, and dealt in narcotics. Giannini had first seen appellant about two months prior to the arrest, just

walking around on the street talking to different people. About a month prior to the arrest he saw him sitting in an automobile talking to a known narcotic's addict, James Pitts. Within the next three weeks he observed appellant on the streets after midnight or after 2 a. m. Approximately one week before the arrest Giannini observed appellant standing on the corner of Ellis and Fillmore Streets at about 2 a. m., and asked him what he was doing out, and where he was working. Appellant said he was working in a hospital, that he was on his way home, that he wasn't doing a thing, that he was a working man. On this occasion the officer warned appellant that if he saw him at late and unusual hours again, he would be booked for vagrancy.

There was testimony by Officer Hess who accompanied Giannini, that there was a couple of minutes of conversation with appellant before he was placed under arrest. Hess was standing next to Giannini questioning other persons on the street near appellant. Hess said that when Giannini asked appellant what he was doing he answered that he was waiting for a friend, that he didn't know where his friend was, but that he was supposed to meet him on the corner. Shortly after the foregoing conversation, Giannini told appellant to take his hand out of his pocket as he had been keeping the left hand concealed. When he refused to do so Giannini grabbed his hand, reached in his pocket and found the marijuana cigarette.

Appellant testified that the officer when he approached him asked him where he was going and what he was doing. He told him that he had been at the Blue Mirror across the street and that he was on his way home. He said he had been on the corner talking to two fellows when the officers approached. Again appellant testified, "He didn't say anything; he didn't say anything; He begin to search me, you know, asked me what I was doing on the corner this hour of the night. I told him I just left the bar; I am going home. He said, 'Take your hands out of your pockets.' I had my hands in my pants pockets. He said 'Take your hands out of your pocket.' I take my hands out and he began searching me. Grabbed me here; I mean he didn't see a cigarette. I didn't see—he found one in my pocket." Appellant said the officer didn't tell him that he was under arrest, that he assumed that he had him on a vagrancy charge. Appellant admitted a prior contact with Officer Giannini, but said that he hadn't warned him not to loiter on the streets but had just asked

him his name and where he was working. On cross-examination he admitted prior vagrancy arrests in 1954.

Officer Giannini testified that after he had placed appellant under arrest, intending to book him for vagrancy, he noticed that he was keeping his left hand in his pocket, and wanting to make sure as to whether or not he had a weapon, he ordered him to remove his hand from his pocket. When he refused, the officer pulled his hand from his pocket, reached in and found the marijuana cigarette. Appellant was taken to the station and booked as a vagrant and for violation of section 11500, Health and Safety Code.

It is urged by appellant that the marijuana cigarette was obtained by an unlawful search and seizure and was therefore inadmissible in evidence. ▮ A search of defendant's person may be justified if he was committing or attempting to commit an offense in the officer's presence. (Pen. Code, § 836, subd. 1), or if the officer had reasonable cause to believe that defendant had committed a felony. (Pen. Code, § 836, subd. 5.) Appellant maintains that there is no evidence that he was committing or attempting to commit a public offense in the officer's presence. He relies on *People* v. *Simon,* 45 Cal.2d 645, 651 [290 P.2d 531], which held that an arrest and search is not justified solely on the ground that defendant was seen "at late and unusual hours." Here, appellant's answers to the question asked him showed that he was on lawful business, that he had been to a bar, that he was on his way home and was waiting for a friend. The other persons with whom appellant had been talking, were merely questioned by the officers and told to move on.

In *People* v. *Simon, supra,* it is said that there is nothing unreasonable in the questioning of persons outdoors at night by police officers, and that under some circumstances a refusal to answer would in the light of other evidence justify an arrest. Here, appellant did not refuse to answer the questions, and gave answers concerning his presence on the street consistent with a lawful purpose. In *People* v. *Kitchens,* 46 Cal. 2d 260 [294 P.2d 17], it was held that while officers were justified in stopping the driver of an automobile and questioning him because of the damaged condition of the vehicle, when the questioning elicited answers consistent with innocence no basis was established for arresting him and searching him and his car. The narcotics discovered in the search of the vehicle were held to be inadmissible in evidence. ▮ A search cannot be justified by what it produces. (*People* v.

*Brown,* 45 Cal.2d 640, 643 [290 P.2d 528] ; *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13].)

It appears that there was not reasonable cause for an arrest on a vagrancy charge at the time the officers crossed the street to where appellant was standing, for at that time they had observed him for only four or five minutes while he was standing in the corner entrance of a liquor store talking to another man at the intersection of McAllister and Fillmore Streets. It was then only a few minutes past closing time for the bars in the neighborhood. ██ The court may take judicial notice of the fact that two municipal railway lines pass this corner. ██ Appellant had twice left the entrance of the store on the corner of a well-lighted street, looked down the street and returned to talk to the person in the doorway. Up to this point, then, there was no conduct to justify an arrest. He might have been looking for a bus, a taxi, or a person. Officer Giannini testified that ''I decided as soon as I walked across the street I was going to book him for vagrancy'' that the first words he said to appellant ''may not have been 'you are under arrest' but within the first few sentences I did place him under arrest.'' If this evidence was uncontradicted in the record, then the case would appear to be similar to *People* v. *Harvey,* 142 Cal.App.2d 728 [299 P.2d 310], recently decided by this court in which the arrest was held to be unlawful, and hence the search incident thereto, unjustified. In that case, plain clothes officers who had information that defendant dealt in narcotics, hid behind a tree in the vicinity of his home. They observed him talking to another person who parked for awhile behind defendant's car and then drove off. They waited while he went into his apartment and came outside again with his hands in his pockets. He then walked back and forth on the street, looking up and down. It was about 8 :30 at night. When defendant crossed the street, the officers accosted him, flashed their badges, told him he was under arrest. They ordered him to take his hands out of his pockets and he refused. A struggle ensued, and the officers found narcotics in a search of his person. It was argued that the fact that he kept his hands in his pockets was a suspicious circumstance, that the officers had a right to investigate a person on the street at night and that defendant's keeping his hand in his pockets was suspicious conduct justifying the officers in searching and seizing him. (See *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52] ; *People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57].) This court stated that

the "difficulty with this argument is that the police officers were not interrogating the defendant, but by their own unqualified testimony they were arresting him." It was held that the demand to take his hands from his pockets was a step in his arrest which the officers had already determined upon, for they said to each other as they had approached him, "Let's place him into custody." They had no intention of interrogating him.

In the present case there is no substantial conflict as to what took place when the officers approached appellant. At one point Giannini testified that he intended to arrest appellant for vagrancy when he crossed the street toward him, and that he told him almost immediately that he was under arrest. Officer Hess who accompanied him, however, testified that there was a couple of minutes of conversation before the arrest in which Giannini was interrogating appellant. Appellant himself testified that he was questioned as to his reason for being where he was, and that he was ordered to take his hand from his pocket. We are of the view that the evidence is insufficient to show that the search was reasonable and that the judgment must be reversed on this ground.

Appellant contends that the officers did not comply with section 841 of the Penal Code, requiring the person making the arrest to inform the person to be arrested of the reason therefor, except where defendant is engaged in the commission of or attempt to commit an offense. It has been held, however, that where the officer has reasonable cause to make the arrest, a violation of the above section is "unrelated and collateral to the securing of the evidence by a search incident to the arrest, for what the search turns up will in no way depend on whether the officer informed 'the person to be arrested of the intention to arrest him, of the cause of arrest, and the authority to make it.' " (*People* v. *Maddox,* 46 Cal.2d 301 at 305 [294 P.2d 6].)

For the first time, on oral argument, counsel for appellant has directed the attention of this court to *People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241], decided by the Supreme Court on September 21, 1956, wherein it was held that the trial court has the power to strike or dismiss a proceeding as to a prior conviction under Penal Code, section 1385. The court may do this of its own motion.

The record herein shows that the trial court, having found the prior conviction of appellant to be true, was greatly disturbed because he was unable to grant appellant probation.

He stated that the law had made it mandatory that he sentence appellant to state prison, that he had no alternative, and that he could only recommend to the Adult Authority a minimum sentence, and the earliest parole.

The transcript shows that the trial judge was in error in concluding that he had no alternative except to sentence appellant to state prison. He apparently was not aware of the power to dismiss the prior conviction in order to avoid that sentence. Since the Supreme Court in *People* v. *Burke, supra,* has now made the law clear in this respect, the trial court in future cases will not fall into this error at the time of sentence.

Judgment reversed.

Dooling, Acting P. J., and Draper, J. pro tem.,* concurred.

A petition for a rehearing was denied December 5, 1956, and respondent's petition for a hearing by the Supreme Court was denied December 19, 1956. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.