[Crim. No. 3487. First Dist., Div. One. Mar. 9, 1959.]

THE PEOPLE, Respondent, v. JESSE LAWRENCE, Appellant.

512

Arthur D. Klang for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Arlo E. Smith and Preble Stolz, Deputy Attorneys General, for Respondent.

WOOD (Fred B.), J.—Defendant was convicted of two violations of section 11500 of the Health and Safety Code: Sale and possession, respectively, of heroin.

As to the sale, there is a total gap in the chain of evidence. Willie Dandridge, an informant-participant who had no narcotics upon his person was furnished $200 in currency (identifiable by the serial numbers of the bills) and was under observation of the officer-witnesses until he entered defendant's place of residence. He remained inside for a period of two and a half to three hours. Upon leaving, he took a taxi, rode in it for two blocks, got out, delivered a package of heroin to one of the officers, was searched and found to have none of the state money in his possession.

One Gerald Williams entered defendant's apartment a few minutes after Dandridge did and remained there until Dandridge left. Defendant's wife, Norvelle Lawrence, entered a few minutes after Williams and remained inside for an appreciable length of time. Upon her departure she went to a certain department store and made some purchases, using one of the 10 dollar bills that had been given the informant by the state. The sum of $250, including $170 of the money the state had furnished Dandridge, was found in a box on a bedside table in defendant's apartment. Plaintiff says there is no testimony that Williams was searched upon his apprehension after leaving defendant's apartment, and we have found none.

Heroin was found in the apartment: some on a cocktail table in the front room; some on a bed in the bedroom; and some in the pockets of a pair of trousers hanging on a closet door. Confronted with two of these items at the time of their seizure, defendant admitted they were his. He said he realized it was heroin and that he used it for his asthma.

Plaintiff says that this admission, the presence of the state money in his apartment, and a certain telephone conversation between Dandridge and defendant, definitely connect defendant with the sale, to the exclusion of his wife, Gerald Williams and the cabdriver.

The telephone conversation occurred shortly before Dandridge entered defendant's apartment. One of the officers placed the call, listened in, and narrated it as follows: "A voice said, 'Hello?'——Mr. Dandridge said, 'Hello, is that you Jesse?' The answer was: 'Yes.' He said, 'Is anything happening?' to which the reply by Mr. Lawrence was, 'Yes.' He says, 'Well, I'd like to get something. Can I come by?' And the voice on the other end of the line said, 'Yes.'" Those words indicate that defendant was at home and that

Dandridge was welcome to visit him. What more, if anything, they meant, is too speculative to constitute a link in a chain of evidence competent to convict defendant of selling Dandridge a package of heroin.

If the presence of some of the state money in the box on the bedside table points to defendant as the seller, that very circumstance points with equal accuracy to his wife whose apartment also it was. In her case there was the added circumstance that she had some of the money upon her person and used it in making certain purchases. There is the possibility, too, that if Williams had been searched the missing $20 of the money might have been found. Nor is it beyond the realm of the possible that Dandridge paid the money to Williams who transferred it to defendant in payment of a debt. None of these mutually inconsistent possibilities rises to the dignity of proof that defendant or his wife or Gerald Williams effected the sale.

Nor was defendant's admission that some of the heroin found in his apartment belonged to him and was used for his asthma, tantamount to an admission that he had sold some heroin to Dandridge. He said, as to the heroin on hand, that he had it there for his own use, a fact corroborated to some extent by one of the officers who testified that in his opinion defendant was under the influence of narcotics at the time of his apprehension. It is unlike the statement defendant Palacio made in *People* v. *Valencia,* 156 Cal.App.2d 337 [319 P.2d 377]. The officer and his informant sought to purchase narcotics from one Valencia, who took them to a certain hotel, went in alone and then returned saying that his "connection" wanted $120 for six grams. The officer gave $150 to Valencia who reentered the hotel and came back with Palacio. A conversation concerning narcotics ensued, in which the officer indicated hesitancy in letting Palacio have the money. Palacio replied: "That's not the way I work. I always give something in return." The officer then asked if the narcotics were good and Palacio said, "I have real good stuff." Thereupon, Valencia handed Palacio the $120. These and other circumstances were deemed sufficient supporting proof even though the officer did not see Palacio hand the narcotics to the informer. Those facts bear no real similarity to the facts of our case.

The facts here presented bear a marked resemblance to those in *People* v. *Barnett,* 118 Cal.App.2d 336 [257 P.2d 1041]. There, the informant-participant was out of sight and

hearing of the officer-witness for one and a half hours, during which time contact with others than the defendant was possible. Another similar case is *People* v. *Morgan,* 157 Cal. App.2d 756 [321 P.2d 873], in which there was no proof that the informer-participant contacted no one in going to and returning from the defendant's apartment. Similarly, in *People* v. *Richardson,* 152 Cal.App.2d 310 [313 P.2d 651], there was at least one person in addition to defendant with whom the informant made contact and from whom he might have made the purchase.

*People* v. *Holland,* 158 Cal.App.2d 583 [322 P.2d 983], invoked by plaintiff, is altogether different from our case. There the informant-participant was in plain view and under continuous observation of various officers from the beginning to the end of the sale transaction and had no contact with any other person than the defendant. So, too, in *People* v. *Alvidrez,* 158 Cal.App.2d 299 [322 P.2d 557], the informant-participant in the sale transaction was, an examination of the record of the case indicates, under constant visual observation of the officers and had no contact with any other person than the defendant.

As to the charge of unlawful possession of heroin, defendant's conviction is amply supported by the evidence: Heroin found in various places in his apartment, coupled with his admission to an officer that some of it belonged to him, that he realized it was heroin, and that he used it for his asthma. Defendant argues that the things found during the search of his premises were illegally admitted in evidence, upon the theory that the arrest which preceded the search was illegal. Defendant unsuccessfully urged this point upon the former appeal. (*People* v. *Lawrence,* 149 Cal. App.2d 435, 443-445 [308 P.2d 821].) The pertinent evidence upon retrial was substantially the same as upon the first trial. We concur in the analysis made and the views expressed by the reviewing court upon the former appeal.

Defendant claims he was erroneously deprived of the testimony of Dandridge to defendant's prejudice and that this requires reversal in respect to his conviction of possession as well as for the sale of heroin. Upon the *voir dire* examination conducted before the court outside the presence of the jury to determine the admissibility in evidence of packages of narcotics that had been seized, Dandridge testified on behalf of the defendant. His testimony was consistent with and

substantially the same as that given by him during the *voir dire* examination upon the former trial. (Summarized on pages 447-448 of 149 Cal.App.2d.)

 The trial court found the seizure legal and declared the evidence admissible, whereupon the trial before the jury was resumed. When Dandridge was again called by the defendant, he refused to answer certain questions, invoking the privilege against self-incrimination. The court ruled he need not answer. Defendant questions this ruling upon the ground (1) it was not a proper claim of the privilege against self-incrimination and (2) Dandridge waived the privilege by testifying upon the *voir dire*.

 It is, of course, the function of the trial court, not of the witness, to determine whether a question tends to incriminate. The test is '' 'whether any direct answer to a proposed question has a tendency to criminate' the witness, which is but another way of saying that the court must determine that no direct answer which the witness may make can tend to criminate him.'' (*In re Berman,* 105 Cal.App. 37, 49 [287 P. 126].) The court properly takes into consideration all of the circumstances of the case in determining whether there is a real danger that a direct answer to a question may incriminate. (*Overend* v. *Superior Court,* 131 Cal. 280, 283 [63 P. 372].)

In the Berman case, the witness had previously given testimony upon deposition, to which his attention was directed. As to each of 12 questions and answers appearing in the deposition, this ''question was put to him: 'I ask you whether the answer just read is not a true statement of fact in response to the question just read?' '' (P. 39.) Of this, the reviewing court said ''if he had answered 'No' he would have given evidence, which beyond all peradventure of doubt would have tended to convict him of perjury. It would have been a direct answer. How could the trial judge possibly find that no direct answer could tend to criminate him?'' (Pp. 49-50.)

 It is not only a direct admission of crime that is privileged but also testimony which ''might furnish a link in the chain by which a conviction might hang . . .'' (*People* v. *McCormick,* 102 Cal.App.2d Supp. 954, 960 [228 P.2d 340], and cases there cited.)

 So, too, in our case, if Dandridge had testified contrary to the testimony he gave on *voir dire,* at this trial and upon the former trial, admitting his cooperation with the officers and participation in the sale of which the defendant

stood charged, he would have given evidence which would have tended to have convicted him of perjury in the giving of his former testimony. He would have been liable to prosecution therefor because the statute of limitations had not yet run as to either of those events.

We do not consider that Dandridge's giving of testimony upon *voir dire* precluded him from asserting the privilege when later called as a witness when the trial was resumed before the jury upon the question of defendant's guilt.

It is established in this state that a witness who testifies upon a preliminary examination does not thereby waive the privilege of not incriminating himself when called to testify at the trial which ensues. (*Overend* v. *Superior Court, supra,* 131 Cal. 280.) The same is true of a person who testifies before a grand jury. He does not thereby waive the right to assert the privilege when called as a witness at the trial. (*In re Sales,* 134 Cal.App. 54 [24 P.2d 916].) It is true that if a witness voluntarily gives testimony on direct examination which would otherwise be privileged he is subject to cross-examination concerning the matters testified to in chief. (*People* v. *Freshour,* 55 Cal. 375, 376.) That, however, is not this case. The *voir dire* examination was in the nature of a special inquiry before the court to determine the admissibility of evidence, properly conducted outside the presence of the jury, not limited to evidence that would be admissible at the trial of the issue of guilt. Unlike the question whether a confession was freely and voluntarily made, it is not proper, when the court has determined the search and seizure lawful, to submit that question and the evidence from which it was determined to the jury for its determination in the trial proper. (*People* v. *Gorg,* 45 Cal.2d 776, 780-781 [291 P.2d 469]; followed upon the former appeal herein, *People* v. *Lawrence, supra,* 149 Cal.App.2d 435, 446-447.) This seems comparable to the case of the witness who testifies upon the preliminary examination or before the grand jury, quite unlike the situation which obtains when a witness voluntarily testifies upon direct examination and thereby subjects himself to proper cross-examination in the very same proceeding or inquiry. In the only case involving this question which has come to our attention it was held that a witness had not, by testifying on *voir dire,* waived his claim of privilege. (*Hutchins* v. *State,* 212 Miss. 145 [54 So.2d 210, 212], citing a dictum in *Summerville* v. *State* (1949), 207 Miss. 54

[41 So.2d 377, 382].) In the Hutchins case, the witness was a codefendant but that was not the reason for the ruling on this point, as we read the decision in that case.

We find no error in the court's refusal to allow defendant to read to the jury Dandridge's testimony given on *voir dire* at the first trial or that given on *voir dire* at the second trial. It is not a case within the purview of section 686 of the Penal Code, which admits testimony given on a former trial by a witness who is ''deceased, insane, out of jurisdiction, or who can not, with due diligence, be found within the state . . .'' Obviously, the witness Dandridge did not come within any of the quoted exceptions. He was physically present in the courtroom. His failure to testify stemmed merely from the exercise of his legal right to assert his privilege against self-incrimination, not because of death, insanity, absence from the jurisdiction or lack of anybody's ability to find him. Defendant would have us read this statute as if it said that the former testimony can be used if the witness is unavailable for any reason not chargeable to the party calling him. That simply can not be done. It would amount to a rewriting of the statute, a legislative not a judicial function.

Defendant advances the argument that the prosecution illegally deprived him of Dandridge's testimony by statements made by the prosecutor to the effect that Dandridge was or would be subject to prosecution for perjury. That would be to speculate as to the motives of Dandridge for asserting his constitutional privilege. Also, it ignores the fact that Dandridge was accorded and received the benefit of independent legal counsel, an attorney of his own choosing, before he asserted his right not to incriminate himself, and the judge who presided at the trial found that the privilege was properly asserted. No basis has been shown for a reviewing court to hold that defendant was improperly deprived of Dandridge's testimony.

The further contention is made that the conduct of the prosecutor in telling Dandridge he would be subject to prosecution for perjury must have prejudiced the jury against Dandridge as a witness and thus prejudiced defendant's case. That result does not follow. Whatever the effect might have been had Dandridge testified, the fact is he did not testify and such failure to testify did not stem from any judicial error. We perceive no possible prejudice to defendant in respect to the charge and conviction of possession of heroin, the evidence in support of which is clear and convincing.

What effect it might have had upon the defense against the charge of selling heroin is moot in view of the reversal of defendant's conviction upon that count.

Defendant has tendered some 30 assignments of misconduct upon the part of the prosecutor and the trial court. It seems unnecessary to discuss them in detail. Some of them bear only upon the sale count, not the count for possession of narcotics. Some pertain to rulings which were correct in law. In some instances, defendant failed to object to remarks of the prosecutor which he now questions, or to ask that the court admonish the jury. In some instances the prosecutor's remarks were not based upon evidence but were in effect later cured by evidence introduced or by stipulation made. Some incidents are of no apparent significance. None do we find prejudicial, particularly in view of the clear and convincing evidence that defendant had heroin in his possession.

Defendant claims that some 20 rulings of the trial court were erroneous. Two of these incidents pertained to the legality of the search, which we have already discussed. Two pertained to the sale count. Three occurred outside the presence of the jury. Denial of defendant's request for a directed verdict of acquittal on the sale count presents nothing in addition to the questions considered upon the appeal from the judgment. As to the remaining incidents we find no error.

It seems necessary to discuss only the refusal of two instructions defendant requested. One of these instructions read as follows: "I herewith advise you that this defendant cannot be convicted if you believe he has not had a fair trial." No authority is cited for the propriety of this instruction. Whether or not the defendant has had a fair trial is a question of law, not a question of fact for the jury's determination. Although a defendant might be entitled to a reversal on appeal on these grounds, he would not be entitled to an acquittal on the basis of the jury's determination of this question.

The other rejected instruction read: "The defendant must not be subjected to any more restraint than is necessary for his arrest and detention. Accordingly, if you believe from the evidence that unnecessary force was used upon him in effecting his arrest on these charges, he has been denied due process of law and is entitled to an acquittal at your hands." The use of unnecessary force may under appropriate circumstances render an arrest or a search illegal and the objects seized inadmissible as evidence, but such use of such force

does not operate, like a pardon, to absolve a man from the consequences of crime and grant him an acquittal.

As to count III, possession of heroin, the judgment of conviction and the order denying a new trial are affirmed. As to count II, sale of heroin, the judgment and the order are reversed.

Peters, P. J., and Bray, J., concurred.