[Crim. No. 3398. First Dist., Div. Two. May 19, 1959.]

THE PEOPLE, Respondent, v. WILLIAM E. SCOTT, Appellant.

Milton Jacobs, under appointment by the District Court of Appeal, and Koblick & Jacobs for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Edward P. O'Brien, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—Alice Jones, Robert L. Pittman and defendant William E. Scott were charged by information with the sale of heroin on November 23, 1956 in violation of section 11500 of the Health and Safety Code. The information also charged the defendant Scott with a prior conviction for possession of narcotics in March 1956. All three pleaded not guilty and personally waived a jury trial. The defendant Scott denied the prior conviction. After a trial, the court found Alice Jones and Robert L. Pittman not guilty. Defendant William E. Scott was found guilty and sentenced to the state prison for the term prescribed by law.

He appeals from the judgment of conviction and the order denying his motion for a new trial, contending that: (1) His arrest without a warrant was illegal and void; (2) The arrest was made in complete disregard of section 841 of the Penal Code, as he was not informed of the cause of the arrest; (3) The trial court erred in permitting the introduction of evidence obtained by unlawful search and seizure; (4) The disclosure of the name of the informer, without other identification or indication as to where he might be found, was in violation of due process; (5) The evidence was insufficient to establish that the informer contacted no one other than the defendant during the time the informer was out of sight of the police officers, and that the defendant knowingly had possession or exclusive control of the heroin sold.

The record reveals the following: About noon on November 21, 1956, the informer, Harrison Burris, was taken to the State Building and searched. After no narcotics were found, Burris was supplied with $20 in marked state funds and taken to the vicinity of 1812 Scott Street in San Francisco by Inspectors Coster, Chasten and McHugh. Eighteen twelve Scott Street is a single dwelling, two story old structure. Inspector Chasten saw Burris step through the threshold of 1812 Scott Street. Shortly thereafter, Burris came out of the house and surrendered a bindle of heroin to the inspectors. Burris was again stripped and searched. No funds were found in his possession. Substantially the same procedure was followed on November 23. After being stripped and searched, Burris was again given $20 in marked state funds, $19 in currency, a 50-cent piece and two quarters. Inspectors Coster, Chasten and McHugh accompanied him to 1812 Scott Street. Inspector Chasten watched Burris ring the door bell. He saw Alice Jones open the door and let Burris in. A few minutes later, Burris returned and gave Inspector Coster two bindles of heroin. Coster again searched Burris and found no funds or narcotics in his possession.

A few minutes after Burris left the premises, one Robert L. Pittman left. The officers did not stop or search him. Inspectors Coster and McHugh, who were dressed in white smocks and carrying a green leather couch, rang the door bell of 1812 Scott Street. Alice Jones opened the door. Inspector Coster pushed open the door and said ''You are under arrest.'' The defendant Scott, dressed only in his shorts, was in the downstairs bedroom. The officers thoroughly searched the premises upstairs and down. No narcotics were found. The officers found $18 of the marked currency which had previously been given to Burris under a mattress in the downstairs bedroom. Alice Jones stated to the officers that this was her ''household money.'' The defendant Scott stated it was his ''house money.'' The officer also noticed two or three dollars in currency on top of the dresser in the bedroom. While the officers were searching the premises, Pittman returned, and was questioned. Pittman was searched and $1.00 in currency and the 50-cent piece of the marked money given to Burris was found on his person. He told the officers that Alice Jones had given him the money to buy some groceries. He had come back without the groceries as the nearby store was closed.

The officers found a hypodermic needle on the floor in the hallway outside the kitchen door. Defendant and Alice Jones

denied ever having seen it before. In the upstairs bathroom, under the bathtub, the officers found a can of milk sugar [a common adulterant used by addicts to cut the strength of the heroin]. Alice Jones told the officers that she gave the milk sugar to her 3-year-old son. Defendant admitted that he and Alice Jones were not married but lived together at 1812 Scott Street. At the trial the defendant testified that he had known Burris for about 12 years; that Burris was a pretty good friend of his; that he saw Burris quite often. The defendant further testified that Burris had brought $20 to 1812 Scott Street about 9 a.m. on November 23, 1956, because Burris owed him $30. The defendant denied selling narcotics to Burris. Pittman testified that he had slept at 1812 Scott Street on the night of November 22, and that after he woke up, defendant and Alice Jones asked him to pick up some groceries at a store nearby. He saw no one else in the house at 1812 Scott Street except the defendant and Alice Jones. Alice Jones testified that on November 23, she opened the door for Mr. Burris, whose name she did not know. However, she recognized him as one of Scott's friends. She took Burris to the downstairs bedroom, woke up the defendant and then returned to the kitchen to feed her child. She did not see Burris leave the house. Later, she testified the defendant gave her some money which was on the top of the dresser in the bedroom. She gave some of this money to Pittman to shop for groceries.

Inspector Chasten testified that on October 19, 21, and 24, 1955, he had made "buys" of narcotics through an informer from 264 Oak Street in San Francisco, where the defendant Scott was living with Alice Jones. On October 25, 1955, the inspector entered the premises. On the person of the defendant Scott he found $47 in marked state funds which had been given to the informer on prior occasions. A quantity of heroin was also found on the premises. The defendant pleaded guilty to a count of possession of heroin and on his plea the second count of maintaining a place where narcotics were used was dismissed on motion of the district attorney. On March 8, 1956, the defendant Scott was sentenced to one year in the county jail which term was later modified to six months. At the trial the defendant denied the sale in March 1956, but admitted using and possessing narcotics at that time.

Defendant's first argument on appeal is that in the above circumstances, an arrest without a warrant was unlawful. Under subsection 3 of section 836 of the Penal Code, an officer

may make an arrest without a warrant when a felony has, in fact, been committed, and he has reasonable cause for believing the person arrested to have committed it. ■ Reasonable cause has been defined by our Supreme Court as such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest, strong, suspicion that the person in question is guilty of a crime. (*People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73].) ■ Reasonable cause justifying an arrest is not limited to evidence that could be admissible at the trial on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535].) ■ Probable cause has been defined as a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178 [281 P.2d 250] ; *People* v. *Brite,* 9 Cal.2d 666 [72 P.2d 122].) ■ What is reasonable is a question of fact which depends on the circumstances and facts of each case. (*People* v. *White,* 159 Cal.App.2d 586 [324 P.2d 296] ; *Go-Bart Co.* v. *United States,* 282 U.S. 344, 357 [157 S.Ct. 153, 75 L.Ed. 374].) ■ Defendant argues that there is no reasonable cause under the facts of this case, as under the rule established by *People* v. *Lawrence,* 149 Cal.App.2d 435, 450 [308 P.2d 821], the crime is committed when the sale is made and not when the informer delivers the contraband to the officers and tells them about the sale. ■ There are many cases holding that an arrest and search may be made solely on the basis of information received from a reliable informer. (See *People* v. *Boyd,* 162 Cal.App.2d 332 [327 P.2d 913].) Thus, it is not necessary that the felony be committed in the presence of the arresting officer. (*People* v. *White,* 159 Cal.App.2d 586 [324 P.2d 296].) ■ The trial court must determine from the evidence before it whether the informer was reliable and whether the officer relied on the information. It is for the court to say whether the officer acted reasonably under the circumstances. (*People* v. *Dean,* 151 Cal.App.2d 165 [311 P.2d 85] ; *Lorenzen* v. *Superior Court,* 150 Cal.App.2d 506 [310 P.2d 180].) ■ Under the facts of this case there can be no question that the trial court properly concluded that the arrest was legal. ■ Defendant also points to the fact that the officers resorted to trickery to get the door open and make the arrest. As we pointed out in *People* v. *Lawrence,* 149 Cal. App.2d 435 at 446 [308 P.2d 821], this fact is immaterial where there is reasonable and probable cause.

■ Defendant also argues that the search made incident

to the arrest was unlawful, and that therefore the hypodermic needle, marked money, and milk sugar found at 1812 Scott Street were erroneously admitted at the trial. ■ The legality of an arrest is not necessarily determinative of the lawfulness of the search incident thereto. ■ Where an arrest is legal, the test is reasonableness of the search under the particular circumstances. (*People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528] ; *People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531] ; *People* v. *Allen,* 142 Cal.App.2d 267 [298 P.2d 714].) ■ It is well established that a search incident to a lawful arrest extends to the premises under the control of the defendant. (*In re Dixon,* 41 Cal.2d 756 [264 P.2d 513] ; *People* v. *Dixon,* 46 Cal.2d 456 [296 P.2d 557].) ■ Under the rules of the cases cited *supra,* the search was proper and the evidence properly admitted.

■ Defendant next argues that the arrest is unlawful for another reason, the failure of the arresting officers to inform him of the cause of the arrest. Section 841 of the Penal Code provides: ''The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or is pursued immediately after its commission, or after an escape.'' ■ It has been held, however, that where an officer has a reasonable cause to make an arrest, a violation of section 841 is unrelated and collateral to the securing of the evidence by a search incident to the arrest. (*People* v. *Harris,* 146 Cal.App.2d 142 [304 P.2d 178] ; *People* v. *Romero,* 156 Cal.App.2d 48 [318 P.2d 835] ; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6].) ■ At the trial, the defendant testified that he knew what the officers were searching for without being told. There is also some evidence indicating that the defendant knew the arresting officers were police officers. Inspector Chasten had arrested him on the prior narcotics offense a few months earlier. ■ Where it is reasonably apparent from the defendant's conduct at the time of the arrest that he knew the person making the arrest was an officer, it is immaterial whether an officer literally complied with section 841 of the Penal Code. (*People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896].)

Defendant further argues that judgment must be reversed as there was a violation of due process. He complains of the failure of the prosecution to disclose the name of the informer

at the preliminary, and the failure of the prosecution at the trial to provide specific information about the whereabouts of Burris. As to the first point, the preliminary hearing in the instant case was held before *People* v. *Lawrence*, 149 Cal.App.2d 435 [308 P.2d 821], and the later decisions which have clarified the law on this point. The record of the preliminary hearing is not a part of the record on appeal and any alleged error cannot therefore be considered by this court. (*People* v. *Justice*, 167 Cal.App.2d 616 [334 P.2d 1031].)

 Our Supreme Court recently decided that the identity of the informer must be disclosed where in connection with a claim of illegal search and seizure there is no showing of reasonable cause, apart from the informer's communication, (*Priestly* v. *Superior Court*, 50 Cal.2d 812 [330 P.2d 39]) or where, in view of the evidence, the informer would be a material witness on the issue of guilt, and nondisclosure of his identity would deprive the defendant of a fair trial. (*People* v. *McShann*, 50 Cal.2d 802 [330 P.2d 33] ; *Mitchell* v. *Superior Court*, 50 Cal.2d 827 [330 P.2d 48] ; *People* v. *Williams*, 51 Cal.2d 355 [333 P.2d 19].)

 In the instant case, the identity of the informer was revealed at the trial. Inspector Coster testified that to the best of his knowledge, Burris was in the county jail. The district attorney volunteered the information that although Burris had been sentenced to six months in the county jail on January 8, 1957, his sentence had been modified and he had been released on March 8, 1957, less than a month before the beginning of this trial on April 2, 1957. Inspector Coster further testified that he was unaware of Burris' release and had no knowledge of his whereabouts at the time of this trial. At this point, defendant could have asked for a continuance to give him an opportunity to find and produce Burris (see *People* v. *Taylor*, 159 Cal.App.2d 752, 756-757 [324 P.2d 715] ). He had testified that Burris was well known to him. Since he did not seek this opportunity to produce Burris, he cannot now complain that Burris was not produced. There is no indication that the prosecution withheld any information it had as to Burris' whereabouts. We know of no rule requiring the prosecution to find such a witness.

Defendant's last two arguments relate to the sufficiency of the evidence to sustain the judgment of the trial court. First he argues that the evidence is insufficient to show that Burris bought narcotics from him to the exclusion of all others, during the time Burris was out of sight of the officers. He

relies on *People* v. *Barnett,* 118 Cal.App.2d 336 [257 P.2d 1041]; *People* v. *Richardson,* 152 Cal.App.2d 310 [313 P.2d 651]; and *People* v. *Morgan,* 157 Cal.App.2d 756 [321 P.2d 873]. In the Barnett case, the informer was not searched before or after the sale, and the police officer saw the informer leave in a car with the defendant and did not see him again until the informer returned an hour later with the narcotics. This court (Division I) held that the chain of circumstances was too tenuous to support an implied finding that Barnett had sold heroin to the informer. In the Richardson case, *supra,* the officer stayed in the car while the defendant, the informer, and another person entered the defendant's residence. About 20 minutes later, the informer returned and handed the officer a packet containing heroin. The informer was not searched before or after the sale. The evidence was held insufficient to justify a conviction for the sale of heroin. In the Morgan case, the informed was searched on three separate occasions, given marked money and taken to defendant's residence. The informer entered while the officers waited in the street. After a brief interval, the informer returned with the heroin and without the marked money. There was no direct evidence that the defendant was at home except on the third occasion. The sale conviction was reversed for the prosecution's failure to prove that the informer-participant contacted no one upon his way to or from the defendant's apartment, and the prosecution's failure to disclose the name of the informer-participant.

The instant case is similar to the above cases, and the more recently decided *People* v. *Lawrence,* 168 Cal.App.2d 510 [336 P.2d 189]. There, the informer, one Dandridge, was stripped, searched and given $200 in marked currency. He was under the observation of the officer witness while he entered the defendant's place of residence. After remaining for two and a half to three hours, Dandridge came out, took a taxi for two blocks. He then got out, delivered a package of heroin to one of the officers, was searched and found to have none of the state's money in his possession. One Gerald Williams entered defendant's apartment a few minutes after Dandridge did, and remained until Dandridge left. He was not searched upon his apprehension after leaving the defendant's apartment. The defendant's wife entered a few minutes after Williams and remained inside for a period of time. She then left and made some purchases in a store with one of the $10 bills

which had been given to Dandridge by the state. The sum of $250, including $170 of the money the state had furnished Dandridge, was found in a box on a bedside table in the apartment. Heroin was found in various places in the apartment and the defendant admitted the ownership and use thereof. The only other evidence connecting the defendant with the sale was a telephone conversation which occurred shortly before Dandridge entered the apartment. Dandridge called the defendant. "A voice said, 'Hello?' ——Mr. Dandridge said, 'Hello, is that you Jesse?' The answer was: 'Yes.' He said, 'Is anything happening?' to which the reply by Mr. Lawrence was, 'Yes.' He says, 'Well, I'd like to get something. Can I come by?' And the voice on the other end of the line said, 'Yes.'" This court (Division I) found a total gap in the chain of evidence connecting the defendant to the sale, and reversed the conviction on the sale count.

■ Factually, the situation here is different from the Lawrence case. The present state of the record clearly supports an inference that Burris bought the heroin from one of the three persons at 1812 Scott Street. The question is whether the state proved facts sufficient to justify the court's finding that Scott was the guilty person rather than Mrs. Jones or Pittman. The state argues that it did so and that therefore the instant case is clearly distinguishable from *People* v. *Lawrence, supra*. As no heroin was found on the premises, it could be inferred that all of it was sold to Burris or that Pittman took it with him when he left the house, shortly after Burris entered. The presence of the marked money in the house lends support to an inference that the sale was by one of the regular occupants of the house, the defendant Scott or Mrs. Jones. Pittman's explanation that Mrs. Jones had given him the money to buy groceries was corroborated by Mrs. Jones. Also, Mrs. Jones' testimony that the defendant had given her the marked money supports an inference that he, in fact, sold the narcotics to Burris. This testimony of Mrs. Jones completes the chain lacking in *People* v. *Lawrence, supra*. This, together with the fact that most of the marked money was found in a room occupied by the defendant, supports an inference that the defendant was the seller. Defendant admitted receiving $20 from Burris on the day in question. Burris did not testify at the trial, and thus the defendant could not corroborate his testimony of the debt owed to him by Burris.

In view of the foregoing, the judgment finds support in the record before us.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied June 18, 1959, and appellant's petition for a hearing by the Supreme Court was denied July 15, 1959.