[Crim. No. 3572.   First Dist., Div. One.   July 13, 1959.]

THE PEOPLE, Respondent, v. AUGUSTINE MATEO, Appellant.

Robert E. Treuhaft, under appointment by the District Court of Appeal, Edises, Treuhaft, Grossman & Grogan and Bertram Edises for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Arlo E. Smith and Preble Stolz, Deputy Attorneys General, for Respondent.

BRAY, P. J.—Defendant together with Velasquez and Carillo were convicted by a jury of two counts of violation of Health and Safety Code, section 11500, (1) possession of marijuana, (2) sale of marijuana, on the same day. Defendant admitted a prior narcotics conviction. Defendant appeals from the judgment of conviction and the order denying new trial.

QUESTIONS PRESENTED

1. Sufficiency of the evidence: (a) possession, (b) sale.
2. Alleged unlawful search and seizure.
3. Legality of conviction on both counts.
4. Was there a variance between indictment and proof?

EVIDENCE

Inspector McBee of the State Narcotics Bureau met one Lopez whom he directed to make narcotic purchases in the Decoto area. The next day he gave Lopez $60 in marked money. About 5 p. m. McBee and two other officers followed an automobile containing Lopez and Carillo. The Lopez automobile stopped across the street from 615 D Street, the McBee car stopping a short distance away. The officers could look down D Street, but could not see the 615 front door. Carillo left the Lopez automobile, crossed the street, returned, then crossed the street again. McBee could see him enter upon the property at 615 D Street but did not actually see him enter the house. In a few minutes he returned carrying a brown paper bag. He got in the Lopez automobile which was then driven off. The police attempted to follow the car, but lost it. Lopez testified that he gave Carillo $50, that Carillo went into 615 D Street, came out, got another $5.00, went back into the house, returning in five minutes with a brown bag which he gave to Lopez, and which contained marijuana. Carillo then drove the automobile away, became suspicious of a truck which appeared to be following, and pulled off into an orchard. About 20 minutes later Carillo drove to his home and left the automobile. Lopez drove on until he encountered Highway Patrolman Boulet to whom he gave the bag containing the marijuana. Boulet radioed for the narcotics people. McBee and others responded.

The group then proceeded to 615 D Street. McBee and Inspector Ojeda were admitted at the front door by defendant's mother. There was no one in the front part of the house, but there were noises behind a locked door in the rear. McBee went around to the back door, knocked a couple of times and asked to be admitted. He could see what was apparently someone looking from behind a window curtain or shade. When there was no response McBee forced the door and entered. Other officers meanwhile entered through the door leading to the front of the house. In the rear portion there were several persons. McBee found one Morales flushing the toilet. Marijuana seeds were scattered on the bathroom floor.

Defendant, Velasquez and two other men were also present, as well as two women and some children. In a bedroom McBee found a small suitcase containing a brown paper bag in which was loose marijuana, a cardboard box containing marijuana cigarettes and a sock containing seven match boxes filled with marijuana. Also in the room was a large suitcase containing 10 brown paper bags filled with marijuana. In a chest of drawers was a box containing loose particles of marijuana. Defendant admitted to McBee that the small suitcase was his but denied knowledge of the narcotic contents. To Ojeda he admitted that "the suitcases" were his but denied knowledge of the contents, saying that he did not know how they got there, except that his mother had heard a noise a day or so ago while he was away and that he supposed that is how the narcotics got there. Fifty dollars of the marked money was found in defendant's possession.

Defendant testified that he lived in a trailer adjacent to 615 D Street. Late in the afternoon of March 18 he went into the house to shave. He had received various amounts of money that day, $10 from one of the men in the house, $125 from his mother and then late in the afternoon she gave him $30. (She testified that Velasquez gave her $30 that day for rent.) Carillo gave defendant $20 that afternoon in the trailer. Defendant claimed to have first met Velasquez on the 18th when the latter inquired about renting a room or trailer. Defendant did not know where he might have obtained any of the marked money. He had never seen the large suitcase or its contents. The small suitcase, the personal effects in it, the cardboard box and some of its contents he admitted were his. He denied a sale to Carillo and knowledge of any narcotics anywhere in the house.

Velasquez testified admitting possession of the marijuana found in the house, but denied any sale and any connection with the marijuana obtained by Carillo. He stated that he arrived March 18th from Los Angeles where he had purchased the marijuana. Happening by the house at 615 D Street and seeing men about he inquired as to whether the trailer was for rent. Defendant told him no but rented him a room in the house. He had taken the large suitcase into the bedroom and placed some narcotics in the small suitcase.

Carillo testified that he knocked at the door of 615 D Street but then proceeded down the street where he purchased the marijuana from one "Mosquito." When returning to the Lopez automobile, he stopped at defendant's trailer and paid him $20 which he owed.

1. SUFFICIENCY. (a) *Possession.*

■ The crime of possession of narcotics requires that defendant exercised control and dominion over the narcotic substance and had knowledge of its presence and character. (*People v. Tabizon* (1958), 166 Cal.App.2d 271, 273 [332 P.2d 697]; *People v. Hancock* (1957), 156 Cal.App.2d 305, 310 [319 P.2d 731].) ■ Defendant does not contend that he had no knowledge of what marijuana was, but merely that he was not aware of its presence. While he lived in the trailer and apparently did not have exclusive possession of the bedroom where the narcotics were found, his mother testified that he stored his possessions in the bedroom. He admitted ownership of the cardboard box and small suitcase and contents exclusive of the marijuana. In the suitcase was a receipt in his name dated four days prior. A reasonable inference is that he retained control over the suitcase. ■ Exclusive possession is not necessary. (*People v. Blinks* (1958), 158 Cal.App.2d 264, 267 [322 P.2d 466]; *People v. Flores* (1957), 155 Cal.App.2d 347, 349 [318 P.2d 65].) ■ While the burden is on the People to prove knowledge of the presence of the narcotic, facts from which such knowledge may be fairly inferred are sufficient. ■ As said in *People v. Antista* (1954), 129 Cal.App.2d 47, 53 [276 P.2d 177], "If the substance [narcotics] had been found in the personal effects of the defendant that would have been a potent circumstance indicating knowledge of its presence, ownership and control." The prosecution's theory that Velasquez was a carrier for defendant is supported by the evidence. Apparently Carillo was a runner who got his share ($5.00) for arranging the sale. Defendant was presumably owner, or at least had control, and also he would necessarily have knowledge. This theory accounts for defendant's possession of the marked money and the placing of some of the narcotics in defendant's suitcase.

(b) *Sale.*

■ Possession of marked money standing alone is insufficient to prove a sale. (*People v. Barnett* (1953), 118 Cal. App.2d 336 [257 P.2d 1041].) ■ Here, however, there are other circumstances than finding the money on defendant. The bags containing marijuana in both suitcases were similar to the one involved in the sale. The officers observed the buyer Carillo enter the property at 615 D Street. The jury could disbelieve Carillo's story that he did not enter the

house but went elsewhere to purchase the narcotic. Also Velasquez denied making a sale from the narcotics he had in the house. There were also the circumstances showing the possession of marijuana by defendant in the house. The situation differs from that in *People*. v. *Barnett, supra,* 118 Cal.App.2d 336, and in *People* v. *Lawrence* (1959), 168 Cal.App.2d 510 [336 P.2d 189], where practically the only evidence against the defendant was his possession of marked money.

### 2. SEARCH AND SEIZURE.

Penal Code, section 836, provides that a peace officer may without a warrant arrest a person when a felony has in fact been committed and he has reasonable grounds to believe the person arrested committed it. ■ Reasonable cause is shown when a man of ordinary care and prudence, knowing what the officer knows, would believe or entertain a strong suspicion that the person is guilty. (*People* v. *Fischer* (1957), 49 Cal. 2d 442, 446 [317 P.2d 967] ; *People* v. *Lawrence* (1957), 149 Cal.App.2d 435, 443 [308 P.2d 821].) ■ A search without a warrant of the premises or of the person may be incidental to a lawful arrest regardless of whether the search is made before or after the arrest. (*People* v. *Simon* (1955), 45 Cal.2d 645, 648 [290 P.2d 531].) ■ The court looks only at the facts and circumstances presented to the police at the time they are required to act. (*People* v. *Silvestri* (1957), 150 Cal. App.2d 114, 117 [309 P.2d 871] ; *People* v. *Moore* (1956), 140 Cal.App.2d 870, 872 [295 P.2d 969].) ■ On the 18th following McBee's observations at 615 D Street, Lopez told McBee that Carillo obtained the marijuana there. The bag of marijuana was produced. McBee had seen Lopez' companion leave the Lopez automobile, return and go back to the premises at 615 D Street and return carrying a brown paper bag. This bag was similar to those found in the larger suitcase. The bags of narcotics were so packed in the suitcase that there was a space for one more paper bag of the same type. The information received from Lopez, the production of the bag of marijuana and the observation of the police, were circumstances which would cause a person of ordinary prudence to believe that a felony had been committed in the house. The officers were therefore entitled to enter and make a reasonable search of the premises for narcotics or other evidence of the suspected sale.

### 3. CONVICTION ON BOTH COUNTS.

■ There were approximately 10 pounds of marijuana found in the larger suitcase, and about 95 marijuana cigarettes and 7 match boxes of marijuana in the smaller suitcase. All of this was in addition to the half pound which Carillo gave to Lopez. None of this additional marijuana was incidental to the sale. ■ It is well established that where the only possession shown is necessarily incidental to its sale or furnishing separate convictions for sale and possession cannot be had. (*People* v. *Taylor* (1958), 159 Cal.App.2d 752 [324 P.2d 715] ; *People* v. *Castiel* (1957), 153 Cal.App.2d 653, 660 [315 P.2d 79].) In those cases the same narcotics were involved in the multiple counts. But conviction may he had where the narcotic possessed is separate and distinct from that sold. (*People* v. *Holliday* (1953), 120 Cal.App.2d 562, 564 [261 P.2d 301].) ■ Here the marijuana left in the house was separate and distinct from that sold. Hence separate convictions for sale and possession were proper.

### 4. VARIANCE.

■ In the first count the information charged Velasquez, Carillo and Mateo with violation of section 11500, Health and Safety Code, in that "they unlawfully had in their possession a narcotic, to wit: marihuana." Defendant contends that Carillo could not under the circumstances have been found guilty of possession of the marijuana found in the room and therefore defendant Mateo should be exonerated on the possession count because "they" (that is, all three defendants) did not possess the narcotic. Assuming that all three could not have been convicted of possession (a matter we are not called upon to decide), nevertheless section 970, Penal Code, completely answers this contention: "When several defendants are named in one accusatory pleading, any one or more may be convicted or acquitted." Moreover, the three defendants were not charged in the information with joint possession or joint sale but simply with sale and possession.

The judgment and order are affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.