[Crim. No. 3772.   First Dist., Div. Two.   Nov. 3, 1960.]

THE PEOPLE, Respondent, v. DAVID GONZALES,
Appellant.

Cominos & Shostak for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John S. McInerny, Deputy Attorneys General, for Respondent.

SHOEMAKER, J.—Defendant was charged by information with (1) a violation of Health and Safety Code, section 11530 (possession of marijuana on July 25, 1959) and (2) violation of Health and Safety Code, section 11531 (sale of marijuana on July 25, 1959). A jury found defendant guilty as charged and judgment was entered sentencing defendant to the state prison. A motion for new trial was denied as to both counts. Defendant appeals from the judgment and from the order denying his motion for a new trial.

The facts developed on the trial were that in July of 1959 the State Bureau of Narcotic Enforcement together with local police were conducting a narcotics investigation in the Salinas area. State Agent Sutton was told by two informers, Alex Carillo and Rafael Carillo, that the defendant was dealing in narcotics; the police added he had engaged in the narcotic traffic in the past and that they had information during regular police work that he was operating again. On July 25, 1959, at the Salinas Police Station, Agent Sutton gave the informer Alex Carillo a skin search, which consists of stripping off all the clothing and then examining the same for narcotics and other contraband. After ascertaining that the clothes did not contain any such articles, the informer was then given two marked one-dollar bills, their serial numbers being noted. The agent and informant then drove to the premises in Salinas where the defendant was living. Sutton kept the informant and the house under observation from his car at a distance of about 25 yards. The informer went into the yard, spoke to the defendant's aunt, came no closer than 4 or 5 feet to her, and then went into the house in which the defendant resided. The informer entered the unlocked door of the defendant's house without knocking. After entering the house, the informant was not seen by Agent Sutton again until he came out of it approximately five minutes later when

he immediately returned to the car and handed the agent two marijuana cigarettes. The agent and informer then returned to the police station and after another skin search, which proved the clothing to be free of narcotics and money, the informer was left at the station and Sutton returned to the house with three other agents. About 15 minutes had elapsed since the informer returned to the auto from defendant's premises with the cigarettes and without the marked money. Agent Sutton entered the house first and did so without a search warrant. The defendant was found alone in the house in bed. He was awake and appeared to have just aroused. Sutton turned over the pillow on the bed and, as the informant had told him, found the two marked dollar bills and eight marijuana cigarettes.

Defendant took the stand and on direct examination admitted his residence on the premises but denied seeing the informant on July 25, making any sale to him of marijuana cigarettes or of possessing any marijuana at all on said date. He further testified that at the time he retired there were no cigarettes or money under his pillow and he did not know how they got there, that he knew the informant, had grown up with him and had worked with him. On cross-examination he said the first time he saw the cigarettes or money was when the officer turned over the pillow, that he did not tell the officer the cigarettes and money were his and that the officer never asked him if they were his property. Later on in the examination in response to the question: "You didn't deny they weren't yours, or anything of that nature?" Defendant replied: "No, I didn't. I did tell him they weren't mine when he asked me, but I told him they weren't mine," which led the district attorney to ask: "Just a second ago you said the officer never asked you whose cigarettes those were. Now you are saying he did ask you? A. Yes, he asked me in a certain way. He said to me, he said 'Is that yours?' I told him no."

■ A consideration of these facts shows that this case clearly is governed by the authority of *People v. Scott* (1959), 170 Cal.App.2d 446 [339 P.2d 162] and *People v. Mateo* (1959), 171 Cal.App.2d 850 [341 P.2d 768], wherein convictions as to sale were sustained even though the sale to the informant was not observed by the officers but where the time the informant was absent from view was short and there were no others present who could have supplied the narcotics.

Thus defendant's contention that there was a gap in the chain of evidence as to the sale and hence his conviction must

be set aside, necessarily fails. He relies on *People* v. *Barnett* (1953), 118 Cal.App.2d 336 [257 P.2d 1041]; *People* v. *Lawrence* (1959), 168 Cal.App.2d 510 [336 P.2d 189]; and *People* v. *Morgan* (1958), 157 Cal.App.2d 756 [321 P.2d 873] and urges their applicability here. These cases we have discussed and distinguished in *People* v. *Scott, supra,* 170 Cal. App.2d 446, commencing at page 454 [339 P.2d 162]. Defendant also relies on *People* v. *Fernandez* (1959), 172 Cal.App.2d 747 [342 P.2d 309], decided subsequently to the above cited cases, as determinative of his appeal. This case does not help defendant, for in it the judgment of conviction as to the sale was affirmed under conditions we find similar to the present case.

Defendant also contends that since the evidence relied upon to sustain his conviction for illegal possession of narcotics was illegally obtained, his conviction on this count should be reversed. His argument, as we understand it, is that the entry into defendant's house made by the informant at the time of sale was a trespass, that this entry being unlawful, the subsequent entry, arrest and search made by the officers are also illegal and the evidence thus obtained inadmissible. Defendant, as a part of this contention, complains that the informant purchaser was not proved to be reliable in the sense necessary to allow the police to make an arrest based upon his information. There is no merit in any phase of this argument. ██ Although information provided by an informer not known by police to be reliable does not constitute probable cause, standing alone, such information corroborated by personal observation of police may justify arrest and search. (*People* v. *Moore* (1956), 141 Cal.App.2d 87, 91 [296 P.2d 91]; *People* v. *Cannon* (1957), 148 Cal.App.2d 163, 166 [306 P.2d 589]; *Willson* v. *Superior Court* (1956), 46 Cal.2d 291, 295 [294 P.2d 36].) Here the informant met the state agent one day before the arrest and was continuously with him until the transaction of sale was had. The police had information of defendant's narcotic addiction from many sources other than the informant, who merely added further information. Then the informant made the purchase we have heretofore detailed and gave the further advice that the marked money and more narcotics were under the defendant's pillow, which is the very place they were found.

██ Where arresting officers had a reasonable belief that the defendant is committing a felony, arrest and search are justified. (*People* v. *Martinez* (1959), 169 Cal.App.2d 242,

246 [336 P.2d 988].) This is such a case. ██ As to the original entry, the defendant admits he knew the informant from childhood, that they had worked together and had visited each other's homes. This added to the evidence which shows defendant sold the cigarettes to the informer, the logical inference is that the entry was ratified and the visit consensual. Under this set of facts, the claim of illegal entry cannot stand and *People* v. *Tarantino* (1955), 45 Cal.2d 590, 595 [290 P.2d 505], relied on by defendant, is not in point, for in that case the private engineer was specially employed by the district attorney to clandestinely install a microphone in defendant's living quarters (that is, to trespass) and the evidence thus obtained was properly excluded. This is not our situation where an informer was paid to make a purchase of narcotics, which was accomplished under the facts we have recounted. In our opinion the constitutional guarantees of the defendant were in no manner violated.

The defendant argues that the district attorney and the trial court were guilty of misconduct prejudicial to the defendant during the trial. The contention revolves around the questions put to defendant on his cross-examination, which we have hereinabove set forth. We find no prejudicial misconduct; ██ the purpose of cross-examination is to ascertain the truth and direct questioning concerning conflicting statements is proper. (*People* v. *Southack* (1952), 39 Cal.2d 578, 590 [248 P.2d 12].)

The defendant finally contends the trial judge and the prosecuting attorney committed prejudicial error when he was questioned regarding a prior misdemeanor conviction for possession of narcotics. ██ Knowledge of the narcotic character of the substance is an essential element of narcotics crimes, and thus evidence of prior narcotics crimes is admissible for the limited purpose of showing the defendant's knowledge, especially where, as here, such knowledge has been specifically denied. (*People* v. *Jackson* (1958), 164 Cal. App.2d 772, 779 [331 P.2d 218] (certiorari denied (1958), 360 U.S. 901 [79 S.Ct. 1287, 3 L.Ed.2d 1256]) ; *People* v. *Cervantes* (1960), 177 Cal.App.2d 187, 190 [2 Cal.Rptr. 107].) The trial court made it abundantly clear to the jury that such evidence on the prior conviction was for the limited purpose of demonstrating the defendant's knowledge. There was no error in permitting this line of questioning.

The judgment and the order denying new trial are affirmed.

Kaufman, P. J., and Draper, J., concurred.