[Crim. No. 7492. Second Dist., Div. One. Dec. 28, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND GEORGE READE, Defendant and Appellant.

Raymond George Reade, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman G. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In count 1 of an information defendants Sanchez and Reade were accused of unlawfully possessing heroin. In count 2 Reade was accused of unlawfully selling, furnishing and giving away heroin, and in count 3 he was accused of driving a vehicle on a public highway while addicted to use of narcotic drugs. Reade admitted allegations of the information that he had been convicted previously of three felonies (burglary, grand theft, and violation of narcotic laws).

In a trial by jury, Sanchez was convicted on count 1, and Reade was acquitted on that count. Reade was convicted on counts 2 and 3, and he was sentenced to imprisonment in the state prison. He appeals from the judgment and sentence. His

notice of appeal states that he also appeals from "the denial" of his motion for a new trial. Since the record does not show that he made a motion for a new trial, his purported appeal therefrom will be dismissed.

Appellant contends that there was no probable cause for forcibly entering his home; that the court erred in receiving in evidence, over his objection, Exhibits 4, 5, 6, and 7 (torn paper, note pad, sugar can and hypodermic needle, and finger stalls) which were taken from his home; that the court erred in not striking out all the testimony of Officers Burley and Caraway; that the evidence was not sufficient to support verdicts as to counts 2 and 3.

On May 19, 1960, about 9:30 p. m., while four deputy sheriffs were observing defendant Reade's house (residence) from their position in an automobile across the street from his house, Reade came out of the house and entered a pickup truck and drove away. The officers followed him while he traveled approximately a mile to a Mobil Service Station at Florence Avenue and Avalon Boulevard. He stopped the truck in the alley behind the station, got out of the truck and went into the men's rest room. The automobile in which the officers were riding was stopped by the curb on the other side (of the street). After Reade had been in the restroom a minute or two he came out, entered the truck and drove away. Deputy Caraway (one of the four deputies) went into the rest room immediately after Reade left and no one else was there. He (deputy) "reached back up under the sink" between the sink and the wall and pulled down a package (wrapped in white tissue paper) in which there were two finger stalls containing a white powder (later identified as heroin). Then, after putting the package in the place where he found it, he returned to the other officers and told them what he had found. One of the officers then drove away in the direction which Reade had driven. The three other officers went behind a fence at the rear of the station and kept the door of the rest room under observation. About an hour later Deputy Caraway returned to the rest room, entered a commode section, and waited there. About 10 minutes thereafter (11:10 p. m.), the defendant Sanchez entered the rest room, went directly to the sink, knelt down and reached up behind the sink, and then left the room. Thereupon Deputy Burley (who had been behind the fence) entered the restroom, and immediately Deputy Caraway examined the place where the package had been and found that the package was gone. From the time Reade left the rest-

636

room to the time Sanchez entered it, no one other than the officers had entered it. Deputy Burley went to an automobile, wherein defendant Sanchez was sitting in the right front seat, and observed that Sanchez leaned forward hurriedly and then straightened up. The deputy observed a piece of white tissue paper in Sanchez' hands and a finger stall on the floor near Sanchez' feet. He arrested Sanchez, and recovered the finger stall which was on the floor and another finger stall which was under the front seat. The deputies took Sanchez to a sheriff substation and searched him and found two pieces of paper—on one of which there were the written words, "Main and Hooper, Shell One," and on the other one there were the written words, "Florence—Avalon, Mobile Two." Deputy Caraway, who was qualified as an expert witness with reference to methods used in illegal narcotic transactions, testified that in his opinion the words on one of those papers indicated one finger stall was to be picked up at the Shell station, and the words on the other paper indicated that two finger stalls were to be picked up at the Mobil station. The deputies went to the Shell station at Main and Hooper Streets, but nothing was found there.

Then the deputies returned to the home of Reade and went upon the porch. Deputy Caraway testified that he knocked on the door and said, "Sheriff's office"; then through a peep hole in the upper part of the door, he saw someone running, and he could hear someone running; the deputies forced entrance into the house; Reade, his wife, and a child were there; the deputies searched the house and found a hypodermic needle, an empty Merck milk-sugar can, some rubber finger stalls, a scratch pad, and some fragments of paper.

One of the fragments or torn pieces of paper was marked Exhibit 4 for identification. The piece of paper on which the words "Florence-Avalon, Mobile Two" were written was marked Exhibit 3 for identification. Deputy Caraway testified that he made a comparison of the two pieces of paper, Exhibit 4 (found in Reade's house) and Exhibit 3 (found in searching Sanchez), and it appeared to him that the two pieces matched "much as a matter of a jigsaw puzzle." He also testified that he noticed that there were fresh scab formations on Reade's left arm and that there were 19 scabbed puncture wounds on his right arm; his eyes were "tearing," there was goose flesh on his arms, and there was some nasal secretion; in the opinion of the witness (Deputy Caraway), Reade was addicted to the use of narcotic drugs.

A chemist testified that the two finger stalls (part of Exhibit 1—the stalls which were in the Sanchez automobile) contained heroin.

Mr. Mire, who was qualified as a handwriting expert and as an expert in examining questioned documents, testified in substance that, in his opinion, Reade wrote the words, "Main and Hooper, Shell One" and "Florence-Avalon, Mobile Two," on the pieces of paper which were found in the possession of Sanchez; and that, in his opinion, Exhibit 3 (the piece of paper regarding the Mobil station) and Exhibit 4 (a torn piece of paper found in Reade's house) were at one time one piece of paper and that that "one piece" of paper had been torn in two.

The deputies did not have a search warrant or a warrant of arrest.

At the close of the prosecution's case when the prosecution offered in evidence the exhibits which had been received for identification (the heroin, finger stalls, hypodermic needle, sugar can, pieces of torn paper), the defendant Reade objected thereto on the ground that there was no probable cause for entering his house or arresting him. He also made a motion to strike out all the testimony of Deputies Caraway and Burley on the ground there was no probable cause for such entry or arrest. Testimony on the subject of probable cause was presented in the absence of the jury. The objection was overruled and the motion was denied.

With respect to probable cause, Deputy Caraway testified that prior to the time he began his surveillance of Reade's home, he had information from various addicts who were in custody at the sheriff's Firestone Station that Reade was a substantial peddler of narcotics; he (witness) had received information that Reade's modus operandi was to use service station restrooms "for his stash of narcotics for delivery"; he (witness) had checked the files of the sheriff's office, and those files showed that Reade had been under investigation regarding narcotics; he (witness) found that Reade had an F.B.I. sheet; his information regarding Reade was received from several persons; his most recent information, prior to the arrest, was received from Rosalio Dominguez; that informant had never given any information which resulted in a conviction.

With respect to probable cause, Deputy Burley testified that the first information that came to his attention regarding Reade was in October 1959 (about seven months before the

arrest), when the witness was working "undercover" for the sheriff's office; at that time the witness received information from a man he met in East Los Angeles who had arranged a narcotic transaction by telephone; the man gave that telephone number to the witness; the number was checked through the telephone company and was found to be the telephone number at Reade's address; since then the witness has received information from members of the Federal Narcotics Bureau and the Los Angeles Police Department that Reade was under investigation for narcotics violations; he had talked to several addicts at the sheriff's Firestone Station regarding Reade, and two or three of those addicts indicated that Reade was the source of narcotics; he did not recall the names of those persons.

Mrs. Reade, wife of defendant Reade (called as a witness by said defendant), testified that the officers broke into the house about midnight; when defendant Reade asked the officers if they had a search warrant, one of the officers hit him with a flashlight; she uses finger stalls in her work as a guild maker—because sometimes she cuts her fingers while doing that work; she gives milk sugar, instead of sugar, to her 4-year-old child.

There was probable cause for entering the house and arresting Reade. The deputies had received information from several addicts that Reade was involved in narcotic transactions, and that his method of operating was to use service station restrooms as a place for stashing narcotics for delivery. It is true that there was no evidence that any such addict was a reliable informer, but it is to be noted that the deputies had information regarding Reade from other sources which corroborated the information furnished by those informers. They had information from federal narcotic agents, from city police officers, and from the files of the sheriff's office to the effect that Reade had been involved in violations of narcotic laws. The deputies had observed Reade when he left his home, drove to and entered the rest room of the Mobil station. They found two finger stalls (containing heroin) behind the sink in the restroom immediately after Reade had left that room. Some of the deputies observed Sanchez enter the room about an hour after Reade had been there. One of the deputies, who was in the rest room when Sanchez entered, saw him immediately reach behind the sink and then leave the room. Two deputies immediately examined the sink and found that the package (heroin) was gone. Immediately thereafter the

deputies found two finger stalls (of heroin) on the floor of the automobile near the place therein where Sanchez was sitting. One of the deputies saw and heard someone, in Reade's house, running immediately after the deputy knocked on the door and said, "Sheriff's office."

In *Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36], it was said at pages 294 and 295: "Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency . . ., an arrest may not be based solely on such information . . . and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. . . . In some cases the identity of, or past experience with, the informer may provide such evidence . . . and in others it may be supplied by similar information from other sources or by the personal observations of the police."

In *People* v. *Gonzales*, 186 Cal.App.2d 79 [8 Cal.Rptr. 704], it was said at page 82: "Although information provided by an informer not known by police to be reliable does not constitute probable cause, standing alone, such information corroborated by personal observation of police may justify arrest and search."

In the present case the personal observation of the deputies was sufficient corroboration of their other information, and the trial court was justified in finding impliedly that there was probable cause for entering the house and for the arrest, search and seizure. The exhibits for identification which were obtained in the search of the house were properly received in evidence.

There was evidence to the effect that a piece of paper which was found in the possession of Sanchez at the time of his arrest had been torn or detached from a piece of paper which was found in Reade's house at the time of Reade's arrest. There was evidence to the effect that Reade had written the words appearing on the piece of paper in Sanchez' possession which directed him to the Mobil station. Finger stalls similar to those found in the service station and in Sanchez' automobile were found in Reade's house. The evidence was sufficient to support the verdict on count 2 on the basis of furnishing and giving away heroin.

There was evidence that Reade drove his truck on the evening of his arrest. Deputy Caraway observed many recent scab formations and needle punctures on Reade's arm. He also saw that Reade's eyes were tearing, there was goose

flesh on his arms, and there was nasal secretion. In that deputy's opinion Reade was addicted to the use of narcotic drugs. The evidence was sufficient to support the verdict on count 3 (driving a vehicle on a public highway while addicted to use of narcotic drugs).

Since there was no motion for a new trial, the purported appeal from such a motion is dismissed.

Affirmance of the judgment carries with it affirmance of the sentence.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied January 25, 1962, and appellant's petition for a hearing by the Supreme Court was denied February 21, 1962.