*In re* MARK.

1. WITNESSES — PRIVILEGE — SELF CRIMINATION — CHARACTER OF TESTIMONY—DETERMINATION OF QUESTION.

   Where.the question put to a witness is such that an answer to it may or may not incriminate him, depending on the purport of the answer, the witness must be the sole judge of whether he will avail himself of his constitutional privilege, and in such case if he say, on his oath, that his answer would criminate himself, his statement is conclusive, and the court can demand no further testimony of the fact.

2. SAME—WAIVER OF PRIVILEGE.

   That a witness testified on an ex parte hearing to facts resulting in the arrest of another for perjury, does not waive the privilege of such witness against self crimination when called to testify at the preliminary examination of the person so arrested.

Certiorari to Luce; Steere, J.   Submitted December 18, 1906.   (Calendar No. 22,047.)   Decided December 21, 1906.

Habeas corpus proceedings by Henry Mark to obtain his release from the county jail of Luce county. There was an order dismissing the writ, and petitioner brings certiorari. Reversed on condition.

*James J. McNeil* (*P. H. O'Brien* and *F. T. McDonald*, of counsel), for petitioner.

*Louis H. Fead*, Prosecuting Attorney, for respondent.

PER CURIAM.   A writ of certiorari brings before us for review habeas corpus proceedings determined in the circuit court for the county of Luce.   Petitioner was prosecuted in that court for the crime of arson.   The case was once tried and resulted in a disagreement.   It is still pending, and is expected to be tried at the next term of said court.

One William Michaels was a witness for the people on the trial of defendant and on the preliminary examination that took place before said trial. It is charged that, in testifying on the preliminary examination, said Michaels committed perjury in testifying as follows:

" In the back room of Henry Mark's [petitioner's] saloon there was a little arrangement made between Mark and myself that * * * I was to borrow a gun from Mr. Olmstead and go down the railroad track from Olmstead's east on the main line and shoot it off twice. I got the gun and shot it off twice. * * * It was the request of Henry Mark that I should cut my coat to make out that some one shot at me. I cut it next morning on the sleeve. * * * I heard Henry Mark say one night in his saloon that those fires were just for a bluff."

A complaint alleging this charge was made by the prosecuting attorney upon suspicion before William J. Embury, a justice of the peace. Before the warrant was issued, petitioner was brought before said justice, sworn, and, on an ex parte examination conducted by the prosecuting attorney, gave testimony which fully sustained the charge of perjury. A warrant was thereafter issued against Michaels, and, on his examination before said justice, the people made petitioner a witness, and the prosecuting attorney asked him several questions, each of which he declined to answer upon the ground that said answer would have " some tendency to incriminate him." Five of those questions, viz., 1, 3, 4, 6, and 7, related to the testimony given by petitioner on the ex parte examination heretofore referred to. Question No. 1 may be taken as a type of these questions. It is as follows:

" Did you or did you not last Monday evening testify before William J. Embury, justice of the peace, that you did not at any time make an arrangement with William Michaels whereby said Michaels was to borrow a gun from one Olmstead, Tuesday, June 5, 1906, and go down the railroad track from Olmstead's east on the main line and shoot it off twice ?"

Question 2 goes directly to the charge. It is as follows:

"Did you have such an arrangement with William Michaels as is mentioned in the question above?"

Question 5 relates to the testimony given by Michaels upon the preliminary examination. It is as follows:

"I ask you, Mr. Mark, whether, on the examination before Harry L. Harris, justice of the peace, in the arson case against you and others, Mr. Michaels testified as follows, to wit: 'I cut my coat, and said some unknown men shot at me, at the request of Mr. Mark. Mr. Mark told me that, if I do this, they would assure me the office of highway commissioner.'"

Because of his refusal to answer these questions, the justice committed petitioner to the sheriff to be by him held in custody "until he shall submit to answer the said questions." The circuit court dismissed the writ of habeas corpus issued to inquire into the legality of this commitment and remanded petitioner to the custody of the sheriff. Is this decision correct?

It is quite obvious that the questions relating to the testimony given by petitioner upon the ex parte examination are preliminary in character, and answers thereto should not be compelled unless the court had a right to proceed further and obtain an answer to question No. 2, which had a tendency to prove that the alleged perjured testimony of Michaels was false. The important question, then, for our determination is this: Had the court authority to compel petitioner to testify (notwithstanding his claim that such testimony would criminate him) whether or not he had made an arrangement with Michaels whereby Michaels was to borrow a gun from one Olmstead and go down the railroad track and shoot it off twice?

Petitioner contends that section 32, art. 6, of the Constitution of this State, reading, "No person shall be compelled in any criminal case to be a witness against himself," excuses him from answering that question. In support of the action of the justice and of the learned circuit judge, it is contended: *First*, that the claim of petitioner that his answer would tend to criminate him was a mere

pretext not made in good faith, but for the dishonest purpose of protecting a confederate; and *second*, that by testifying on the ex parte examination petitioner waived his constitutional privilege. We will consider each of these questions.

*First.* Is petitioner's testimony that he declines to answer upon the ground that it would tend to criminate him a mere pretext? Before we can undertake to determine this issue, it must appear that the court has a right to determine it. Has it that right? The rule by which this is to be determined is correctly stated by Chief Justice Marshall, 1 Burr's Trial, p. 244, as follows:

" When a question is propounded [a question which the witness declines to answer upon the ground that it may tend to criminate him] it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it *may* criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily, then, from this statement of things, that, if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact."

This language was cited and approved in *Re Moser*, 138 Mich. 302, and our decision in that case is in conformity therewith.

Can we say no direct answer to the question under consideration may criminate petitioner? Clearly not, for, if he answer the question " Yes," thereby admitting that he made the arrangement therein stated, he does criminate

himself. This is, therefore, a case in which petitioner's statement "upon his oath that his answer would criminate himself" is conclusive. It precludes further inquiry No court has authority to disregard it.

2. Did petitioner waive his constitutional right by testifying at the ex parte examination before the justice? A similar question arose in *Temple* v. *Com.*, 75 Va. 892. There it was held that "the fact that the witness testified before the grand jury, and that it was on his testimony that the indictment was found, will not deprive him of his privilege to decline to testify on the trial of the party indicted." In the course of that decision the court said (quoting with approbation from an earlier decision, *Cullen* v. *Com.*, 24 Grat. [Va.] 624):

"If a full disclosure of the facts might tend to criminate the witness, we cannot see how that tendency is at all removed by showing that the witness had elsewhere made a statement tending to criminate him. The question before us is not what the witness may have said elsewhere, but whether, when it is apparent that a disclosure from him may tend to criminate him, he shall now, in a pending trial, be compelled to make that disclosure, although he claims his constitutional right of refusal. We do not see that his statements elsewhere have anything to do with the question.".

· In *Samuel* v. *People*, 164 Ill. 379, the court held (as stated in the headnote in that case):

"The right of a witness in a criminal case to refuse to give evidence tending to criminate himself is not waived by the fact that he has signed an affidavit of the truth of the allegations in an information upon which the case is based."

We cannot hold that petitioner waived his constitutional privilege.

It follows from this reasoning that the court had no authority to commit petitioner for refusing to answer questions 1, 2, 3, 4, 6, and 7. This reasoning, however,

does not apply to question 5. We are unable to see how any answer to that question would have a tendency to criminate petitioner.

The order of the circuit court dismissing petitioner's writ should be vacated, and an order made directing his release upon his submitting to answer said question No. 5.