Clarence McCONKEY, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 1464.

Supreme Court of Alaska.

Dec. 29, 1972.

Herbert D. Soll, Public Defender, Bruce A. Bookman, Asst. Public Defender, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Dist. Atty., Stephen Dunning, Asst. Dist. Atty., Anchorage, Joseph D. Balfe, Dist. Atty., M. Kennith Frank, Asst. Dist. Atty., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR and ERWIN, JJ.

## OPINION

CONNOR, Justice.

Clarence McConkey appeals from a conviction for criminal contempt. The finding of contempt was based on his refusal to answer a question propounded on direct examination by the district attorney in the criminal trial of one Joseph Anthony. Appellant contends that the trial court erroneously rejected his invocation of the privilege against compulsory self-incrimination. This raises several troublesome issues about the proper scope of the priv-

ilege in the particular factual setting of this case.

In the early afternoon of August 31, 1970, a house in Sutton, Alaska, was broken into and approximately $750 was taken from it. Appellant and Joseph Anthony later were arrested near Glennallen and charged with burglary in a dwelling house, a violation of AS 11.20.080. On November 3, 1970, appellant pleaded guilty to the above offense. At the request of the prosecutor, the court then permitted examination of appellant concerning Anthony's participation in the burglary.

The district attorney stated that this questioning was for the purpose of preparing for possible trial of the charge against Anthony. Neither the appellant nor his counsel objected to such questioning. In part the testimony included the following:

"Q. All right. Now, Mr. McConkey, on or about the 31st of August were you in the vicinity of Sutton, Alaska?

A. Yes, I was.

Q. And were you in the company of any other person?

A. Anthony was with me.

. . . . . .

Q. Now, would you just state for the record please with regard to this burglary, what happened?

A. We went up to the house and I went in to use their bathroom and was looking around the house, found a purse with money in it, had close to Seven Hundred and Fifty, Sixty Dollars ($760.00), something like that. Took the money and left.

. . . . . .

Q. And when you found the money, you say we were looking around the house, did Mr. Anthony look around in the house too?

A. I was in the bathroom.

Q. And he was the one that was looking around the house. Did he find the money?

A. Yes he did.

. . . . . .

Q. Did you know what you were doing, Mr. McConkey, when you went in the house?

A. Well, I know I was going in to use the bathroom, I didn't know. Joe asked me if we was going in to look for money. When he found that, I took some too."

On January 6, 1971, appellant was called by the state to testify at Anthony's trial. At this point, on the advice of his counsel, appellant refused to answer questions propounded by the district attorney about the August 31st burglary. The court excused the jury and heard argument of counsel as to whether appellant should be required to answer such questions. Appellant's counsel contended that "any question that relates in any way to this incident places Mr. Mc-Conkey in jeopardy of being charged with the crime of inciting the commission of a crime" under AS 11.10.070.[1] The state responded with arguments that by his guilty plea appellant had "placed himself beyond the protection of the fifth amendment as to facts relating to . . . the August 31st, 1970, burglary" and that, in any event, constitutional prohibitions against double jeopardy would prevent prosecution under AS 11.10.070.

After argument, the court directed appellant to testify responsively[2] and recalled the jury. Appellant did answer a series of general questions regarding the indictment

1. Under AS 11.10.070 a person who "wilfully and knowingly solicits, incites or induces another to commit a felony or a misdemeanor in the state" is guilty of a crime.

2. The court stated:
"It is my intention to again direct this witness to answer the question that was put to him. If he fails to answer that question I will hold him in contempt of court. . . . I don't intend to go beyond first refusal."

to which he had previously pled guilty.[3] However, he refused to answer the following question:

> "[I]sn't it true that on the 31st of August, 1970, while you were in the Sutton area, that man to my left in the white shirt seated beside Mr. Coryell, Mr. Joseph Anthony was with you in the Sutton area?"

The jury was again excused and the district attorney, upon request by the court, summarized appellant's testimony during the November 3rd plea hearing. The court then asked appellant's counsel how his client could further incriminate himself, given the prior disclosures. Counsel replied that in testifying at his plea hearing appellant had waived his privilege against self-incrimination as to that proceeding only. The court rejected this argument, recalled the jury, and directed appellant to answer the above-quoted question. Appellant refused, and the court found him in criminal contempt. In sentencing appellant to 45 days in jail,[4] the court stated:

> " . . . Mr. McConkey could not further incriminate himself by testifying to anything that he has already testified to under oath on the record and in open court."

On appeal appellant argues that no continuing waiver of the privilege against self-incrimination arose either from his plea of guilty to the burglary charge, or from his prior testimony at the plea hearing, and that a sufficient basis for his claim of jeopardy had been demonstrated.

One of us, the writer of this opinion, concludes that if appellant had answered the question he could not have incriminated himself in any conceivable prosecution under AS 11.10.070. Given this conclusion it is not necessary to reach the question of whether the privilege was waived when appellant testified at the November 3rd plea hearing. Another of us rests his decision on the conclusion that the privilege had been waived. The third member of this panel concludes that the appellant's apprehension of self-incrimination may have been real, but that he inadequately demonstrated the basis of such fear to the trial court. As a result the conviction for contempt is affirmed, but for differing reasons.[5]

Analysis should start from the proposition that "[t]he witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself . . . ."[6] The court must evaluate the hazard, the witness somehow showing enough to indicate a basis for fear of incrimination while withholding facts which would prove it.[7] The burden is not great:

> "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."[8]

The claim must be allowed unless it is " 'perfectly clear . . . that the witness

---

3. Appellant's counsel continually advised him that he could refuse to testify.

4. Appellant had previously been sentenced to eighteen months imprisonment on the burglary conviction. The court ordered that the two sentences run consecutively.

5. Because of this disposition we do not reach the state's argument that prosecution of appellant for violation of AS 11.10.070 would be barred by constitutional prohibitions against double jeopardy. *Cf.* Mead v. State, 489 P.2d 738, 743 (Alaska 1971); Robinson v. State, 484 P.2d 686, 687–688 (Alaska 1971); Whitton v. State, 479 P.2d 302, 312–314 (Alas-

ka 1970). Nor do we decide whether it would be statutorily permissible to punish both for violation of AS 11.10.070 and for participation in the commission of the crime solicited, incited, or induced.

6. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

7. "[I]f the witness, upon interposing his claim, were required to prove the hazard . . . he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Id.* at 486, 71 S.Ct. at 818.

8. *Id.* at 486–487, 71 S.Ct. at 818.

is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate." [9]

The privilege extends not only to answers that would in themselves support a conviction but also to those which might furnish "a link in the chain of evidence" leading to a conviction.[10] Yet the apprehension must be shown to be real.[11] Thus a problem arises as to apparently innocuous questions when the court has no facts before it which would suggest that a responsive answer might result in incrimination of the witness. The proper analytical scheme is set out in United States v. Coffey, 198 F.2d 438, 440–441 (3d Cir. 1952):

"It is enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime . . . , and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case . . . .

Finally, in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry."

Applying these criteria to the case at bar, it is plain that the privilege was improperly invoked. Any fear of self-incrimination was unfounded. Appellant, called to testify at the criminal trial of another, refused to state whether the defendant then on trial was with him in an area in which appellant had committed burglary. The peril asserted is incrimination under AS 11.10.070, soliciting another to commit a crime. Yet no responsive answer could have directly established any element of that offense. Nor is it perceivable how such an answer might have yielded information useful to the state in a prosecution, however improbable, for violation of AS 11.10.070. The state already had knowledge through appellant's previous testimony that the burglary was a concerted effort between himself and Mr. Anthony. The gist of the offense under AS 11.10.070, however, is not conspiracy, but solicitation, incitement or inducement. In his previous testimony appellant described a burglary which was the result of impulse. He does not now claim that by testifying at Anthony's trial he might have revealed perjury in his former testimony. It follows that appellant's claimed hazard of incrimination is fanciful.

It should be stressed that this opinion rests on the particular factual setting of this case. Further legal developments in this sensitive area must be left to case-by-case determinations.

The trial court correctly overruled the claim of privilege, but not because the privilege was waived. Appellant simply did not demonstrate a reasonable basis for its recognition.

Affirmed.

9. Hoffman v. United States, *supra* n. 6, at 488, 71 S.Ct. at 819.

10. Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964); Hoffman v. United States, *supra* n. 6, 486; Blau v. United States, 340 U.S. 159, 161, 71 S.Ct. 223, 95 L.Ed. 170 (1950).

11. The fear that the claim of privilege may be spurious is not academic. Because of bribe, threat, or purpose to aid another, a witness who speaks once may later assert the privilege in order to cloak nothing but a refusal to speak the truth. The United States Supreme Court has consistently held that a witness may not refuse to testify when there is no real or substantial hazard of incrimination. *See, e. g.,* Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed. 2d 889 (1968); Rogers v. United States, 340 U.S. 367, 374, 71 S.Ct. 438, 95 L.Ed. 344 (1951); Brown v. Walker, 161 U.S. 591, 600, 16 S.Ct. 644, 40 L.Ed. 819 (1896).

BOOCHEVER, J., did not participate.

RABINOWITZ, Chief Justice (concurring).

I join in my colleagues' affirmance of McConkey's conviction for contempt. My analysis of the record has led me to conclude that although McConkey's apprehension of self-incrimination may have been real, he failed to adequately demonstrate the basis of such fear to the superior court at Anthony's trial.

In the course of the change of plea proceedings which were held prior to Anthony's trial, McConkey testified in part as follows:

I went up to the front door which was the door I was supposed to have entered.

. . .

Later during redirect examination, McConkey answered in part:

Well, I knew I was going in to use the bathroom, I didn't know. Joe asked me if we was going in to look for money.

In my view these portions of McConkey's testimony suggest that McConkey may have reasonably believed that any further testimony on his part in the Anthony trial could have been used against him in a subsequent prosecution for inciting the commission of a crime under AS 11.10.070. A reading of McConkey's testimony leads to the reasonable inference that Anthony and McConkey may have discussed burglarizing the Sutton dwelling prior to their actual entry and that Anthony looked to McConkey for instructions before their commission of the burglary. Thus, I find no grounds for the court's characterization of McConkey's claim of privilege as "fanciful" or of the burglary as the "result of impulse."

I conclude, however, that McConkey's fear of self-incrimination was inadequately demonstrated to the trial court. McConkey simply did not show the trial court "by argument how conceivably a prosecutor,

building on the seemingly harmless answer, might proceed step by step to link the witness with some crime . . . . ." United States v. Coffey, 198 F.2d 438, 440 (3d Cir. 1952). McConkey did not produce a transcript of his change of plea hearing at Anthony's trial, nor did he explain by way of summary how his answers could have furnished "a link in the chain of evidence" leading to a conviction. The only explanation offered by counsel for McConkey was the following one:

My position for the record is that any question that relates in any way to this incident places Mr. McConkey in jeopardy of being charged with the crime of inciting the commission of a crime, which is section 11.10.070 of the Alaska statutes. I realize that these preliminary questions are of a foundational nature and at first blush would not appear to be dangerous questions to whether Mr. McConkey might later be prosecuted and convicted of the crime I've just cited, but my position as his attorney is that I cannot afford to gamble and guess as to how far Mr. McConkey might go and then safely stop without opening the door to extensive cross examination and to complete disclosure of information that might tend to incriminate him

. . . .

In my view, this explanation was inadequate to demonstrate to the court a reasonable basis for a fear of self-incrimination. A trial court need not be left to speculate over the nexus between a witness's seemingly innocent answer and some possible subsequent prosecution. Thus, I agree with my colleague's conclusion that, "Appellant simply did not demonstrate a reasonable basis" for the invocation of the privilege against self-incrimination.[1]

ERWIN, Justice (concurring).

I concur in the result reached in this case, but would base the decision on the

---

1. In view of this conclusion, I find it unnecessary to reach the waiver issue raised by the parties below and relied upon in

the other concurring opinion of this court.

waiver of the privilege against self-incrimination.[1] Such a decision can only be reached after a careful analysis of the decisions in the federal courts. It must be determined to what extent the scope of the privilege against self-incrimination and the fifth amendment protections of the federal constitution, as articulated by the federal courts, have been made binding on this court.[2]

The privilege against self-incrimination is of ancient origin, in genesis being traceable to the abuses of inquisitions by ecclesiastical officials, and later by secular authority, whose purpose was to compel a man to confess to a crime with which he had not been charged. Later, the privilege was expanded to protect an accused from compulsory self-condemnation. Thus, the privilege was originally oriented to the protection of a defendant, actual or prospective.[3] However, at an early date the common law afforded the privilege as well to the ordinary witness although he was neither accused nor suspect.[4]

The dynamic growth of the constitutional privilege reflects that of its common law ancestor so that the privilege, unbounded by historical origin, "has now developed into a broad right of silence, a freedom not to speak—complementing freedom of speech."[5] The existence of the privilege is not dependent upon the nature of the proceedings;[6] nor does it matter that the likelihood of prosecution is slight so long as its potentiality is real.[7] Moreover, the privilege may be properly invoked even though no responsive answer could directly support a conviction; it is enough that an admission might "[furnish] a link in the chain of evidence needed in a prosecution . . . ."[8]

The privilege against compulsory self-incrimination is a personal privilege. As such it may be waived, for example, by choosing not to remain silent.[9] On appeal

1. On the basis of the testimony taken at the time of the original plea of guilty, I must agree with Justice Rabinowitz that the fear of self-incrimination could not be fairly characterized as illusory.

2. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

3. This orientation is reflected in the phrasing of both the federal and the Alaska constitutional provisions guaranteeing the privilege. U.S.Const. amend. V: "No person . . . shall be compelled in any criminal case to be a witness against himself." ; Alaska Const. art. 1, § 9: "No person shall be compelled in any criminal proceeding to be a witness against himself."

4. For discussions of the historical development of the privilege see Murphy v. Waterfront Comm. of N.Y. Harbor, 378 U.S. 52, 58–63, 84 S.Ct. 1594, 1598–1601, 12 L.Ed.2d 678, 683–686 (1964) ; DeLuna v. United States, 308 F.2d 140, 144–150 (5th Cir. 1962) ; 8 Wigmore, Evidence, § 2250 at 267–295 (McNaughton rev. 1961).

5. DeLuna v. United States, 308 F.2d 140, 150 (5th Cir. 1962) (footnote omitted). "To apply the privilege narrowly or begrudgingly—to treat it as an historical relic, at most merely to be tolerated— is to ignore its development and purpose." Quinn v. United States, 349 U.S. 155, 162, 75 S.Ct. 668, 673, 99 L.Ed. 964, 972 (1955).

6. McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed.2d 158, 161 (1923).

7. United States v. Miranti, 253 F.2d 135, 139 (2nd Cir. 1958) :
We find no justification for limiting the historic protections of the Fifth Amendment by creating an exception to the general rule which would nullify the privilege whenever it appears that the government would not undertake to prosecute. Such a rule would require the trial court, in each case, to assess the practical possibility that prosecution would result from incriminatory answers. Such assessment is impossible to make because it depends on the discretion exercised by [the public prosecutor]. (footnote omitted).
But cf. Mason v. United States, 244 U.S. 362, 366, 37 S.Ct. 621, 622, 61 L.Ed. 1198, 1200 (1917) (fear of prosecution must be more than "a mere imaginary possibility of danger.")

8. Blau v. United States, 340 U.S. 159, 161, 71 S.Ct. 223, 224, 95 L.Ed. 170, 172 (1950).

9. Hammonds v. State, 442 P.2d 39, 41 (Alaska 1968).

the state argues by testifying at his plea hearing appellant waived his privilege and that the waiver remained in force at the Anthony trial. The almost universal rule is that no waiver of the privilege against compulsory self-incrimination continues to a later proceeding by reason of incriminating testimony given in an earlier one.[10] The no-waiver rule has found application in numerous contexts: (1) invocation of the privilege during a criminal trial after prior disclosures made (a) to an investigating officer,[11] (b) before a grand jury,[12] (c) before some type of preliminary hearing,[13] (d) during a civil action,[14] or (e) during a prior trial of the same criminal charge;[15] (2) invocation of the privilege before a grand jury after prior disclosures made to an investigating officer,[16] during

---

10. 8 Wigmore, Evidence, § 2276(4) at 470–472 (McNaughton rev. 1961); McCormick, Evidence, § 130 at 274 (1954).

11. United States v. Goodman, 289 F.2d 256, 259 (4th Cir. 1961):

> [A] prior disclosure to investigating officials cannot constitute a waiver of the privilege with respect to the same matter in a subsequent legal proceeding. A waiver of the privilege must occur in the same proceeding in which it is sought to be invoked.

See also Jeffries v. United States, 215 F.2d 225, 226, 15 Alaska 83, 87 (9th Cir. 1954); People v. Cassidy, 213 N.Y. 388, 107 N.E. 713, 715 (1915); Commonwealth v. Fisher, 398 Pa. 237, 157 A.2d 207, 210–211 (1960). Contra, Schoeps v. Carmichael, 177 F.2d 391, 400 (9th Cir. 1949) (dicta); In re Desaulnier, 276 N.E.2d 278, 281 (Mass.1971) (dicta).

12. In re Neff, 206 F.2d 149, 152 (3d Cir. 1953):

> The privilege attaches to the witness in each particular case in which he may be called on to testify, and whether or not he may claim it is to be determined without reference to what he said when testifying as a witness on some other trial, or on a former trial of the same case, and without reference to his declarations at some other time or place. (footnote omitted).

See also, United States v. Malone, 111 F.Supp. 37, 39 (N.D.Cal.1953); Ex parte Sales, 134 Cal.App. 54, 24 P.2d 916, 919 (1933); Duckworth v. Dist. Ct. of Woodbury County, 220 Iowa 1350, 264 N.W. 715, 721 (1936); Apodaca v. Viramontes, 53 N.M. 513, 212 P.2d 425, 431 (1949); State v. DeCola, 33 N.J. 335, 164 A.2d 729, 734–735 (1960); Hummell v. Superior Court, 100 R.I. 54, 211 A.2d 272, 274 (1965). Contra, Ellis v. United States, 135 U.S.App.D.C. 35, 416 F.2d 791, 800–808 (1969) (Skelly Wright, J., dissenting at 808–809).

13. Overend v. Superior Court of City and County of San Francisco, 131 Cal. 280, 63 P. 372, 374 (1900); People v. Lawrence, 168 Cal.App.2d 510, 336 P.2d 189, 193 (1959); In re Mark, 146 Mich. 714, 110 N.W. 61, 62 (1906); Hutchins v. State, 212 Miss. 145, 54 So.2d 210, 212 (1951). Cf. Samuel v. People, 164 Ill. 379, 45 N.E. 728, 729 (1896) (affidavit initiating prosecution); Miskimins v. Shaver, 8 Wyo. 392, 58 P. 411, 420 (1899) (same). Contra, Crum v. Brock, 136 Miss. 858, 101 So. 704, 705 (1924), criticized in Comment, 38 Harv.L.Rev. 1122 (1925).

14. Ex Parte Berman, 105 Cal.App. 37, 287 P. 125, 127 (1930) (no waiver by answering interrogatories in separate civil action). But cf. Loraitis v. Kukulka, 1 Ill.2d 533, 116 N.E.2d 329, 331–332 (1953) (civil action held to be one proceeding so that sworn pleading constitutes waiver of privilege at trial); Stalder v. Stone, 412 Ill. 488, 107 N.E. 2d 696, 700 (1952) (same as to deposition).

15. George R.R. and Banking Co. v. Lybrend, 99 Ga. 421, 27 S.E. 794, 800–801 (1896):

> The second trial is a de novo investigation before another jury, whose duty it is to consider the case in the light only of the evidence adduced at that hearing, and to allow the witness to assert his privilege would result in no undue advantage or injustice to either party to the cause.

See also United States v. Wilcox, 450 F.2d 1131, 1141–1142 (5th Cir. 1971); Woodward v. State, 21 Ala.App. 417, 109 So. 119, 121 (1926); Mallin v. Mallin, 227 Ga. 833, 183 S.E.2d 377, 379 (1971); State v. Rawls, 252 Or. 556, 451 P.2d 127, 128–129 (1969); Emery v. State, 101 Wis. 627, 78 N.W. 145, 152 (1899). Cf. Commonwealth v. Phoenix Hotel Co., 157 Ky. 180, 162 S.W. 823, 826 (1914) (closely related trials).

16. United States v. Miranti, 253 F.2d 135, 139–140 (2nd Cir. 1958); Ballantyne v. United States, 237 F.2d 657, 665 (5th Cir. 1956).

an earlier trial,[17] or at a prior preliminary hearing [18] or grand jury investigation; [19] invocation of the privilege before a legislative committee after prior disclosures made to an investigating officer [20] or during a civil action.[21]

Several reasons have traditionally been given for this result. To allow the witness to claim the privilege at a distant and separate subsequent proceeding results in no undue advantage or injustice to either party in the latter proceeding. Moreover, circumstances following the first disclosure may give new grounds for apprehension. Finally, repetition of the prior testimony may add to its credibility, negating inadvertence. These traditional rationalia seem to me insufficient to support the no-waiver result.[22]

While I freely concede that the vast majority of federal decisions noted previously support the assertion that waiver of the privilege against self-incrimination holds only for the hearing in question, it appears the factual circumstances of these cases dictate this result. I have been unable to find a case in which the accused was in fact represented by counsel at the prior judicial proceeding and was actually told of the purpose of his testimony. Further, in only a small minority of cases were the proceedings presided over by a judge familiar with problems in this area.

These cases do not say that there can never be a waiver of the privilege against self-incrimination, nor does logic support such a conclusion. Obviously, under proper circumstances, with proper understanding, any constitutional right can be waived and this court and the Supreme Court of the United States have alluded to such situations.

In Rutherford v. State,[23] this court articulated the doctrine that waiver of a constitutional right could only occur knowingly and intentionally.[24] In rejecting the assertion that waiver could occur by silence this court made reference to opinions of the Supreme Court of the United States in the following language:

> The United States Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938), defined 'waiver' as 'an intention-

17. United States v. Field, 193 F.2d 109, 110 (2d Cir. 1951).

18. Cullen v. Commonwealth, 65 Va. (24 Grat.) 624, 637 (1873) (the first reported case dealing with the question of waiver by prior testimony) :
The question before us is not what the witness may have said elsewhere; but whether, when it is apparent that a disclosure from him may tend to criminate him, he shall now, in a pending trial, be compelled to make that disclosure, although he claims his constitutional right of refusal. We do not see that his statements elsewhere have anything to do with the question.

19. United States v. Miranti, 253 F.2d 135, 140 (2nd Cir. 1958); Ballantyne v. United States, 237 F.2d 657, 665 (5th Cir. 1956); State v. DeCola, 33 N.J. 335, 164 A.2d 729, 731–733 (1960). Contra, United States v. St. Pierre, 132 F.2d 837, 840 (2nd Cir. 1942) (two different grand jury appearances regards as part of same proceeding); Loubriel v. United States, 9 F.2d 807, 808 (2nd Cir.

1926) (same); State v. Fary, 19 N.J. 431, 117 A.2d 499, 504–505 (1955) (same).

20. Marcello v. United States, 196 F.2d 437, 445 (5th Cir. 1952).

21. Poretto v. United States, 196 F.2d 392, 394 (5th Cir. 1952).

22. The weakness of the rationalia usually advanced to support the no-waiver result has generated considerable criticism. Dean McCormick, for example, states that the rule "protects chiefly the person accused of crime, and gives very little protection to the witness." McCormick, Evidence § 130 at 274 (1954). See also Houghton, Requiring Witnesses to Repeat Themselves, 47 Tex.L.Rev. 266 (1969); Comment, Whether Witness' Prior Voluntary Testimony Constitutes Waiver of Privilege of Self-Incrimination in Second Trial of Same Case, 73 Dickinson L.Rev. 80 (1968).

23. 486 P.2d 946 (Alaska 1971).

24. Id. 949.

al relinquishment or abandonment of a known right of privilege.' The Supreme Court further stated that every presumption should be indulged against waiver, Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177, 1180 (1937), and that the Court would not presume acquiescence in the loss of fundamental rights. Ohio Bell Telephone Co. v. Public Utilities Comm., 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093, 1103 (1937).[25]

The case at bar fits the classic pattern of a waiver knowingly and intentionally made:

(1) The witness at the time of entry of the plea of guilty to the crime of burglary was represented by the public defender.

(2) At the time McConkey entered his plea, the district attorney informed the court that McConkey would be called to testify as a witness against his co-defendant, and that the state desired to place him under oath to ascertain the factual background of the burglary.

(3) No objection was made to the statement that he would testify at the trial of his co-defendant by either McConkey or his attorney.

(4) McConkey was then sworn and voluntarily related the factual circumstances of the burglary.

(5) Subsequently, McConkey received a sentence on a plea of guilty to burglary by the same superior court judge under a pre-sentence report which noted his cooperation with the district attorney and his willingness to testify at the trial of his co-defendant.

I conclude the trial court was correct in holding that McConkey waived his privilege against self-incrimination as to matters previously testified to, and thus was in contempt of court for failing to answer the same question in the trial of his co-defendant.