*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| C.D., a Minor, | ) | |
| | ) | Supreme Court No. S-17447 |
| Appellant, | ) | Court of Appeals No. A-12968 |
| | ) | |
| v. | ) | Superior Court No. 3AN-16-00004 DL |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Appellee. | ) | No. 7425 – January 24, 2020 |
| | ) | |

Certified Question and Jurisdiction Transfer from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Michael Jude Pate, Assistant Public Defender, Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Nancy Simel, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

We accepted transfer of this case from the court of appeals to consider a constitutional claim arising from the application of a juvenile jurisdiction waiver statute. The superior court generally must grant a petition to waive juvenile jurisdiction if, after

a hearing, it finds that a minor is not amenable to treatment in the juvenile justice system. A statutory provision outlines specific circumstances creating a rebuttable presumption that a minor is not amenable to such treatment; the burden to prove amenability to treatment then shifts to the minor. In this case a minor subject to the statutory provision did not testify at his waiver hearing and did not overcome the presumption; the superior court granted the State's waiver petition. The minor appeals, contending that the statutory rebuttable presumption and shifted burden of proof violate his constitutional right against self-incrimination and his constitutional due process rights.

We earlier issued an order, with an opinion to follow, vacating the superior court's decision and remanding for further proceedings allowing the minor to testify with certain protections. We now explain that fundamental fairness requires adopting an exclusionary rule when a minor bears the burden of rebutting the statutory presumption of being unamenable to treatment in the juvenile justice system: the minor's testimonial evidence at the waiver hearing cannot be used as substantive evidence over the minor's objection at any subsequent juvenile adjudication or adult criminal proceedings.

## II.    STATUTORY FRAMEWORK

"A juvenile offender has no constitutional right to be tried in a juvenile court."[1] The right to have one's case heard in juvenile court instead is "granted by the state legislature."[2] We thus begin by describing the relevant statutory framework.

Juvenile courts generally have jurisdiction over "[p]roceedings relating to a minor under 18 years of age residing or found in the state . . . when the minor is alleged to be or may be determined by a court to be a delinquent minor as a result of violating

---

[1]    *W.M.F. v. State*, 723 P.2d 1298, 1300 (Alaska App. 1986).

[2]    *Id.*

a criminal law."[3]  But juvenile jurisdiction is waived automatically in several situations, allowing the State to prosecute a minor as an adult.[4]  The State also may petition the court to waive juvenile jurisdiction; if the court grants the petition, the juvenile case is closed and the minor may be prosecuted as an adult.[5]

To succeed on a waiver petition, the State typically bears the burden of demonstrating "probable cause for believing that [the] minor is delinquent and . . . that the minor is not amenable to treatment."[6]  But a minor who allegedly has committed "an unclassified felony or class A felony . . . that is a crime against a person . . . is rebuttably presumed not to be amenable to treatment" and has the burden of rebutting that presumption.[7]

"A minor is unamenable to treatment . . . if the minor probably cannot be rehabilitated by treatment under [Alaska's juvenile delinquency laws] before reaching 20 years of age."[8]  "In determining whether a minor is unamenable to treatment, [a] court may consider [1] the seriousness of the offense the minor is alleged to have committed, [2] the minor's history of delinquency, [3] the probable cause of the minor's delinquent behavior, and [4] the facilities available to the [Department of Corrections] for treating

---

[3]      AS 47.12.020(a).

[4]      *See, e.g.*, AS 47.12.030 (allowing automatic waiver of juvenile jurisdiction in several situations, including when minor over 16 years old commits certain felonies).

[5]      *See* AS 47.12.100(a).

[6]      *See* AS 47.12.100(a), (c).

[7]      AS 47.12.100(c)(2).

[8]      AS 47.12.100(b).

the minor."[9]  Although the statute frames the factors permissively ("the court may consider"), Alaska Delinquency Rule 20(d)(1) provides that in a waiver order the court must make written findings of fact stating that "the juvenile is not amenable to treatment *based on* the factors stated in AS 47.12.100(b)."  (Emphasis added.)  A superior court thus must at least consider each factor and base its amenability finding on the factors.  But all four factors do not need to indicate that a minor would not be amenable to treatment for a court to order waiver of juvenile jurisdiction.[10]

We turn now to the facts of this case.

## III.  FACTS AND PROCEEDINGS

### A.  Facts

In early January 2016 15-year-old C.D.[11] shot and killed his mother and older sister at the family's home.  Taking his younger sister with him, C.D. then left the home in his parents' truck, intending to drive to his grandfather's cabin.  He was taken into custody at a gas station.  While in custody C.D. waived his right to remain silent and his right to counsel and confessed to police detectives.

The record contains a few clues about C.D.'s possible motivations for committing these crimes but no clear answers.  C.D. apparently had been depressed and suicidal at times in the months leading up to the incident.  He possibly had been abusing his prescription attention-deficit disorder medication, and his mother had taken him off the medication because of his marijuana use.  His mother had removed him from school

---

**9**      *Id.* (numbering added).

**10**     *J. R. v. State*, 616 P.2d 865, 867 (Alaska 1980) ("[N]ot all four of th[e] factors need be determined adversely to the youth to warrant waiver of juvenile jurisdiction.").

**11**     We use initials to protect C.D.'s identity.  *See* AS 47.12.300(c).

a few months prior to the incident because he had been skipping classes to hang out with his friends. His mother also had convinced him to break up with his girlfriend because she was a "distraction." His parents had been considering placing him in a residential treatment program for youth with substance abuse problems.

C.D. stated in his confession that his family had been nagging him. He claimed that he had been asleep prior to the shooting and "woke up to it happening." He stated that in the past he had woken up and been unable to remember interacting with his family. When pressed on the cause of his actions, he apparently stated, "I think I was just finally done with everyone nagging."

## B.    Proceedings

### 1.    Waiver petition and prehearing motions

The State filed a petition to adjudicate C.D. as delinquent shortly after the incident, charging him with two counts of murder in the first degree and one count of vehicle theft. A few weeks later the State petitioned to waive juvenile jurisdiction.

Murder in the first degree, one of the crimes C.D. has been charged with, is an unclassified felony crime against a person.[12]   C.D. thus is presumptively unamenable to treatment under AS 47.12.100(c)(2) and bears the burden of rebutting that presumption by presenting evidence regarding the seriousness of his offense, his past delinquency, the probable cause of his alleged delinquent behavior, and the available treatment facilities.[13]   C.D. filed a number of motions prior to the waiver hearing, contending in one that AS 47.12.100(c)(2) violates the Alaska and United States Constitutions. C.D. argued that the statute was unconstitutional as applied to him

---

[12]    *See* AS 11.41.100(b) ("Murder in the first degree is an unclassified felony . . . ."); AS 47.12.990(3) (" '[C]rime against a person' means an offense set out in AS 11.41.").

[13]    *See* AS 47.12.100(b).

because it violated his privilege against self-incrimination, violated his due process rights by creating an illegal rebuttable presumption, and violated his right to equal protection by "creating a classification in which the state has a very weak interest that causes serious mental harm to the accused minor classified for adult jail."  C.D. stated in his motion that, if he elected to testify at the waiver hearing, he would seek to preclude the State from using his statements at trial.

The superior court denied C.D.'s motion, reasoning that Alaska's waiver statute did not require C.D. to admit guilt or show remorse to demonstrate he was amenable to treatment.  The court stated that a minor could prove amenability to treatment in a number of ways other than offering incriminating testimony, including "through expert testimony; testimony of teachers, counsellors, probation officers, clergy, or family; records of past psychiatric treatment; and juvenile detention, or social services records."

### 2.    Waiver hearing

Prior to the waiver hearing, C.D. stipulated that there was probable cause to believe he was delinquent; the superior court concluded at the hearing that the State thus satisfied its burden of establishing probable cause under the waiver statute.[14]  C.D. then attempted to rebut the statutory presumption that he was not amenable to treatment. He introduced evidence about his background, educational history, and his time at the youth detention center where he was being detained.  C.D. did not testify, but he called several friends, family members, teachers, and detention center staff members to testify on his behalf.  C.D.'s aunt and grandparents offered opinions on his actions, speculating that he may have felt he had no other choice.  The State presented evidence about C.D.'s conduct at the detention center, including stealing from another resident, planning a

---

[14]    *See* AS 47.12.100(a).

-6-                                                                    **7425**

potentially violent escape with three other juveniles in the facility, and writing obscenities on a wall in his own blood. Despite these incidents, C.D.'s monthly detention summaries generally were favorable.

The State presented a forensic psychologist's opinion that he did not believe C.D. would "be sufficiently rehabilitated, by age 20, to be safe in th[e] community." The psychologist stated that he was most concerned about C.D.'s "likelihood of violent recidivism" and that on a test of risk for future dangerousness C.D. scored in the 78th percentile of all juvenile offenders.

### 3.     Waiver order

The superior court granted the State's waiver petition. The order indicates that C.D.'s failure to provide adequate evidence regarding the probable cause of his behavior weighed heavily in the court's decision. The court analogized C.D.'s case to *C.G.C. v. State*.[15] In *C.G.C.* a minor shot and killed his mother and brother and wounded several others after a day of drinking and consuming cocaine and marijuana with his friends.[16] There was evidence of an argument between C.G.C. and one of his friends shortly before the shootings.[17] At C.G.C.'s waiver hearing several experts testified that he suffered from emotional and substance use issues explaining, at least in part, his violent actions.[18] The experts agreed that C.G.C.'s treatment prognosis was generally favorable.[19] But the experts disagreed whether C.G.C.'s problems could be adequately

---

[15]     702 P.2d 648 (Alaska App. 1985).

[16]     *Id.* at 648-49.

[17]     *Id.* at 649.

[18]     *Id.* at 650.

[19]     *Id.*

addressed by age 20.[20]   The superior court granted the State's waiver petition, and the court of appeals affirmed the superior court's decision.[21]

Comparing the two cases, the superior court characterized C.G.C.'s crimes as more serious than C.D.'s.  The court noted that in C.G.C.'s case experts still had testified his treatment prognosis was good; experts were able to identify a probable cause for C.G.C.'s actions and a corresponding treatment protocol.[22]   The court noted in contrast that C.D.'s actions were "so far, inexplicable" and that the only expert testimony in C.D.'s case indicated he would not be sufficiently rehabilitated by age 20.

The superior court further stated that because "the burden is upon C.D. to show his amenability to treatment, it was incumbent on him to provide evidence as to what, if any, treatment he might require and how quickly that treatment might be successful.  He has not done so."  The court reiterated that the "most significant" factor informing its decision was that C.D. "committed these killings with little or no provocation, after awakening from a nap."  The court noted that "[t]he stakes are incredibly high, for both society and C.D., and yet he has given no real explanation for his behavior and no information about what treatment he needs."

The superior court stated that its reasoning did not imply C.D. would have had to waive the right to remain silent by testifying or consulting mental health experts. The court stated that C.D. "could have presented expert testimony that was based only on file reviews and testimony . . . [or] on interviews with friends and family members." The court also suggested that C.D. "could have presented additional informed lay opinions."

---

[20]   *Id.*

[21]   *Id.* at 651.

[22]   *See id.* at 650.

### 4.    Motion for reconsideration

C.D. sought reconsideration, asking the superior court to delay its waiver decision until he had the opportunity to participate in a treatment program through the juvenile justice system. He asserted that holding the court's waiver decision in abeyance would "reconcile[] strongly competing interests"; the court would have more accurate information with which to make its decision, and C.D. would not "needlessly" be placed in adult jurisdiction.

The superior court denied reconsideration, saying that the request was "legally unsupportable and impractical." The court noted that holding the decision in abeyance would implicate C.D.'s speedy trial right. And the court stated that, "[m]ore to the point, treatment cannot begin unless C.D. is adjudicated to be a delinquent minor and a disposition order is entered. Before such an event occurs, C.D. cannot be compelled to discuss his acts with treatment providers."

### 5.    Appeal

C.D. appealed the superior court's waiver decision to the court of appeals. The court of appeals certified the appeal to us because it involves a significant question of law under the Alaska Constitution.[23] We accepted the certified appeal and assumed jurisdiction.[24]

---

[23]    *See* AS 22.05.015(b) (providing supreme court transfer jurisdiction over court of appeals' case involving significant constitutional law question or substantial public interest issue).

[24]    We review questions of constitutional law de novo. *State v. Gonzalez*, 853 P.2d 526, 529 (Alaska 1993).

## IV. DISCUSSION

### A. When AS 47.12.100(c)(2) Applies, An Exclusionary Rule Is Necessary To Balance The Right To Present A Waiver Defense Against The Privilege Against Self-Incrimination.

C.D. argues that AS 47.12.100(c)(2), as applied in this case, violates his constitutional privilege against self-incrimination by forcing him to present evidence about the probable cause of his actions. C.D. also argues, based almost entirely on *McCracken v. Corey*,[25] that the statute violates his due process rights by forcing him to choose between his right to defend himself and his privilege against self-incrimination.[26] Because we agree with C.D. that an exclusionary rule is necessary, as a matter of fundamental fairness, to balance a minor's right to present a defense at a waiver proceeding against the minor's privilege against self-incrimination, we decline to decide whether AS 47.12.100(c)(2) violates the privilege against self-incrimination or the right to due process.

The right to due process includes the right to present evidence in one's defense prior to the deprivation of life, liberty, or property.[27] When a statute vests the right to have a minor's case heard in the juvenile justice system, that right constitutes a

---

[25] 612 P.2d 990, 998 (Alaska 1980) (exercising inherent supervisory powers to adopt exclusionary rule preventing testimony presented by parolee at parole revocation hearing from being used against parolee in subsequent criminal proceeding).

[26] Although the State contends that C.D. waived this issue because he did not make the same argument in the superior court, his due process argument is so intertwined with his self-incrimination argument that we conclude it has been preserved for review.

[27] *See* Alaska Const. art. I, § 7; *Sanders v. State*, 364 P.3d 412, 422 (Alaska 2015) ("Although it is not absolute, a defendant's right to present a defense is a fundamental element of due process." (quoting *Smithart v. State*, 988 P.2d 583, 586 (Alaska 1999))).

liberty interest that cannot be denied without due process.[28]   Alaska's juvenile delinquency laws vest in certain minors the right to have their cases heard in juvenile court.  Alaska Statute 47.12.020(a) provides:

> Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter . . . when the minor is alleged to be or may be determined by a court to be a delinquent minor as a result of violating a criminal law of the state or a municipality of the state.

Alaska Statute 47.12.030 specifies that minors over the age of 16 alleged to have committed certain offenses will not be subject to juvenile jurisdiction.  All other minors alleged to have violated Alaska's criminal laws, including those for whom the State is seeking to waive juvenile jurisdiction, have a liberty interest in juvenile status.[29]  C.D. thus had a due process right to present evidence at the waiver hearing to protect his juvenile offender status and avoid being waived to adult criminal court.

Minors also may invoke the Alaska Constitution's privilege against self-incrimination at juvenile waiver hearings.[30]  We have interpreted Alaska's privilege against self-incrimination to be broader than its federal counterpart.[31]  The privilege

---

[28]     *See Kent v. United States*, 383 U.S. 541, 553 (1966) (holding that juvenile waiver hearings must "assume[] procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness"); *State v. Angel C.*, 715 A.2d 652, 661 (Conn. 1998) (interpreting *Kent* as "stand[ing] for the proposition that if a statute vests a juvenile with the right to juvenile status, then that right constitutes a liberty interest, of which the juvenile may not be deprived without due process, i.e., notice and a hearing").

[29]     *See Angel C.*, 715 A.2d at 661.

[30]     *See* Alaska Const. art. 1, § 9; *R.H. v. State*, 777 P.2d 204, 211 (Alaska App. 1989).

[31]     *See, e.g.*, *Scott v. State*, 519 P.2d 774, 785 (Alaska 1974) (holding that,
(continued...)

"reflects a complex of our fundamental values and aspirations," including "the protection of individual liberty and privacy."[32]  It protects the rights of criminal defendants "not only to avoid being compelled to give incriminating responses to particular inquiries, but [also] to resist being placed in a position where inquiries can be put to [them] while [they are] under oath."[33]  The privilege ensures that "the ascertainment of the facts [at a

---

[31]      (...continued)
unlike the U.S. Constitution, "the privilege against compelled self-incrimination under the Alaska constitution prohibits extensive pretrial prosecutorial discovery in criminal proceedings").

[32]      *State v. Gonzalez*, 825 P.2d 920, 933 (Alaska App. 1992) (quoting *Kastigar v. United States*, 406 U.S. 441, 444 (1972)), *aff'd*, 853 P.2d 526 (Alaska 1993).

[33]      *Diggs v. State*, 274 P.3d 504, 506 (Alaska App. 2012) (quoting 6 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 24.5(a), at 424 (3d ed. 2007)).

For this reason we reject the State's invitation to apply what it terms the "*Wickham/Luce* rule" and decline considering C.D.'s due process argument because he did not testify in the waiver proceeding.  In *State v. Wickham* we adopted the rule set out by the U.S. Supreme Court in *Luce v. United States*, 469 U.S. 38 (1984), "requiring federal criminal defendants to testify to preserve for review a claim of improper impeachment with a prior conviction."  796 P.2d 1354, 1356 (Alaska 1990).

The *Wickham* rule is inapplicable in the waiver hearing context.  The harm in compelling a minor to present evidence at a pretrial waiver hearing is that the minor may be forced to provide testimonial, incriminating evidence that the State can subsequently use to obtain a conviction.  Requiring such testimony to preserve an argument for appeal would erode a primary purpose of the privilege against self-incrimination — to "prevent the state, whether by force or by psychological domination, from overcoming the mind and will of the person under investigation and depriving him of the freedom to decide whether to assist the state in securing his conviction."  *See In re Gault*, 387 U.S. 1, 47 (1967), *abrogation recognized by Allen v. Illinois*, 478 U.S. 364 (1986).  When a defendant is determining whether to testify at a criminal trial, the State already has presented its case.  The defendant can weigh the risks involved in testifying with full knowledge of the evidence. Minors in waiver proceedings lack that knowledge.

(continued...)

criminal trial] is a 'one-way street' " in which the defendant "is presumed to be innocent[] . . . [and can] stand silent while the state attempts to meet its burden . . . to prove the defendant's guilt beyond a reasonable doubt."[34] "The privilege extends not only to answers that would in themselves support a conviction but also to those which might furnish 'a link in the chain of evidence' leading to a conviction."[35] Much of the amenability-to-treatment evidence a minor might wish to present under AS 47.12.100(b), such as testimonial evidence regarding the seriousness of the alleged offense or its probable cause, could "furnish 'a link in the chain of evidence' leading to conviction."[36]

We considered similar tension between the right to due process and the privilege against self-incrimination in *McCracken*.[37] McCracken, a parolee, was "charged with being a felon in possession of a firearm, a violation of both Alaska law and the conditions of his parole."[38] McCracken's parole revocation hearing was held

---

[33] (...continued)
We also conclude that considering C.D.'s due process argument does not require us to rule on "subtle evidentiary questions outside a factual context" as we would in the case of a challenge to allegedly improper impeachment evidence. *See Luce*, 469 U.S. at 41.

[34] *Scott*, 519 P.2d at 785 (quoting *Jones v. Superior Court of Nevada Cty.*, 372 P.2d 919, 924 (Cal. 1962) (Peters, J., dissenting)).

[35] *Id.* at 786 (quoting *McConkey v. State*, 504 P.2d 823, 826 (Alaska 1972)).

[36] *See id.* (quoting *McConkey*, 504 P.2d at 826); *Ramona R. v. Superior Court*, 693 P.2d 789, 792 (Cal. 1985) ("Significant evidence [a juvenile may wish to present at a waiver hearing] may well exist only in the knowledge of the juvenile. As to the circumstances and gravity of the offenses alleged, the juvenile may be the only witness who can present any mitigating circumstances for the court to consider.").

[37] 612 P.2d 990 (Alaska 1980).

[38] *Id.* at 991 (internal citation omitted).

prior to his criminal trial.[39] Although the superior court ruled that any parole hearing testimony on McCracken's behalf could not be used against him, he elected to present no evidence.[40] McCracken's attorney explained in an affidavit that he had advised McCracken to not present a defense because the attorney thought the State would use any presented information in the subsequent criminal trial.[41] The parole board found McCracken had violated his conditions of release, and he was remanded to finish serving his original sentence.[42] But he later was acquitted of the criminal charges.[43] McCracken petitioned for a writ of habeas corpus, alleging that holding "the revocation hearing prior to the trial on the criminal charges forced him to make an unconstitutional election between his due process right to present a defense at the hearing and his right against compulsory self-incrimination."[44] Ruling in McCracken's favor, we stated: "In the interests of fairness, a parolee should not be forced to choose between remaining mute at a revocation proceeding, thereby surrendering his right to present a defense, or testifying at the revocation hearing and incurring the possibility of incriminating himself."[45]

By requiring a minor to choose between presenting relevant, testimonial, amenability-to-treatment evidence or preserving the privilege against self-incrimination,

---

[39]    *Id.*

[40]    *Id.*

[41]    *Id.* at 998.

[42]    *Id.* at 991-92.

[43]    *Id.* at 992.

[44]    *Id.* at 993 (internal citation omitted).

[45]    *Id.* at 997-98.

AS 47.12.100(c)(2) forces a minor into the same unfair dilemma described in *McCracken*. And the statute creates an even greater danger of self-incrimination in a juvenile waiver hearing than is present in a parole revocation hearing, because the burden is on the minor to establish amenability to treatment.[46] At a waiver hearing a minor choosing to present the best amenability-to-treatment evidence to protect the interest in remaining in juvenile court may self-incriminate and hand the State evidence it can use to convict the minor in subsequent adjudications or criminal proceedings. Requiring such an election is "inconsistent with [our] constitutional values."[47]

As in *McCracken* we conclude that, for cases in which AS 47.12.100(c)(2) applies, it is necessary to exercise our "inherent supervisory powers" to create an exclusionary rule preventing the State — over the juvenile's objection — from using a minor's juvenile waiver hearing testimony,[48] and the fruits of that testimony, at a

---

[46] *See* AS 47.12.100(c)(2)(B); *Resek v. State*, 706 P.2d 288, 294 (Alaska 1985) ("In a forfeiture proceeding the danger of self-incrimination is even greater than in a parole revocation hearing, since the burden of proof is placed on the claimant to establish by a preponderance of the evidence that the seized property is not forfeitable.").

[47] *McCracken*, 612 P.2d at 995 (quoting *People v. Coleman*, 533 P.2d 1024, 1030 (Cal. 1975)).

[48] In *McCracken* we noted that the exclusionary rule applies "upon timely objection" of the parolee. 612 P.2d at 998. A minor seeking to benefit from the exclusionary rule similarly bears the burden of timely objecting to the State's offer of the waiver hearing testimony at the subsequent juvenile adjudication or adult criminal proceeding. *See Moreau v. State*, 588 P.2d 275, 280 (Alaska 1978) ("The exclusionary rule is not the type of doctrine designed to protect against conviction of the innocent. Rather, it is a prophylactic device . . . . justice does not generally require that it be applied on appeal where it is not urged at trial or where new grounds for its invocation are presented on appeal."); 1 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 52 (7th ed. 2013) ("[T]he general approach is that a failure to make a specific objection at the time the evidence is proffered, is a waiver for appeal of any ground of complaint
(continued...)

subsequent criminal trial[49] or adjudicatory proceeding in juvenile court.[50] And, as in *McCracken*, juveniles in such hearings must be advised in advance that testimony "may not be admitted against [them] at a subsequent trial on the underlying offense."[51] We leave to superior courts in the first instance to decide whether this exclusionary rule should extend to other testimonial evidence presented by a minor at a waiver hearing.[52]

This exclusionary rule will mitigate much of a minor's risk in exercising the due process right to present a defense at a waiver hearing. And it is consistent with the policy underlying juvenile waiver hearings. A waiver hearing is not designed to determine whether a minor is guilty; it is designed to determine whether a minor is amenable to treatment.[53] By increasing the likelihood that a minor will be able to offer relevant evidence of amenability to treatment, this exclusionary rule will enable superior courts to make better decisions in waiver proceedings.[54]

---

[48] (...continued)
against its admission.").

[49] *McCracken*, 612 P.2d at 998.

[50] *See In re Gault*, 387 U.S. 1, 55 (1967) ("We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults."), *abrogation recognized by Allen v. Illinois*, 478 U.S. 364 (1986).

[51] 612 P.2d at 998.

[52] *See id.* at n.22 (discussing range of evidence that might be subject to exclusionary rule); *cf. id.* at n.23 (discussing State's duty in later proceedings to show its evidence was derived independently from evidence subject to exclusionary rule).

[53] *See* AS 47.12.100(a).

[54] Whether the State may use a minor's excluded testimony for the sole purpose of impeachment is an issue not before us. But we emphasize that a minor's truthful testimony is crucial to maintaining the integrity of the judicial process. *United*
(continued...)

**B.**   **We Reject C.D.'s Argument That His Case Must Be Assigned To A Different Judge On Remand.**

C.D. argues that we should require that a different judge be assigned to his case on remand. C.D. contends that the language in the superior court judge's waiver order calls into question the judge's objectivity about the crimes. C.D. points out that the court's waiver order describes the crimes as committed "in cold blood," characterizes C.D.'s decision to kill his mother and sister as "deliberate and callous," and describes C.D.'s crimes "at the high end of the scale on the 'seriousness' question." C.D. also takes issue with the order comparing his case with *C.G.C.*[55] The order quoted *C.G.C.* — "[w]e find it difficult to imagine a more frightening or egregious episode of unprovoked violence than that established by the State's proof in this case"[56] — and stated that the words "apply here." C.D. analogizes his case to *Donlun v. State*; we remanded *Donlun* for resentencing before a different superior court judge because the original judge

---

[54]    (...continued)
*States v. Havens*, 446 U.S. 620, 626 (1980) ("We have repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences."). Thus, other courts have held that prior excluded testimony may be used to impeach a defendant's "clearly inconsistent testimony" at a later proceeding. *People v. Coleman*, 533 P.2d 1024, 1044-45 (Cal. 1975) (holding prosecution could use revocation hearing testimony to impeach or rebut clearly inconsistent testimony at later trial); *People v. Macias*, 941 P.2d 838, 847-49 (Cal. 1997) (holding that voluntary juvenile fitness hearing statements may not be used as substantive evidence of guilt but are admissible for sole purpose of impeachment during subsequent related trial).

[55]    702 P.2d 648 (Alaska App. 1985).

[56]    *Id.* at 651.

"accused [the defendant] of perpetrating unspecified crimes and sentenced him, at least partially, on the basis of th[ose] assumptions."[57]

We reject C.D.'s bias argument because *Donlun* is inapposite and C.D.'s contention that the judge cannot act as an impartial arbiter in this case is unpersuasive. Unlike the judge in *Donlun*, there is no evidence that this judge based his decision on material outside the record or that he is incapable of rendering a fair judgment.[58] The statements C.D. highlights as reflecting bias are part of the court's required findings regarding the "seriousness" of C.D.'s crimes.[59] It was acceptable to consider whether the crimes were committed in the heat of passion or "in cold blood" in evaluating their seriousness.[60] And C.D.'s case also is, in fact, similar to *C.G.C.*[61] Even if the judge has formed an opinion of C.D., "it is acceptable for a judge to have an opinion of a party as a result of something learned in an earlier proceeding, provided that the judge still can act as an impartial arbiter."[62] The waiver order makes clear that the most important factor relied on in granting the State's petition was that C.D. offered no explanation for his conduct. The statements C.D. points to as demonstrating bias do not indicate the

---

[57]     550 P.2d 369, 371 (Alaska 1976).

[58]     *See id.*

[59]     *See* AS 47.12.100(b); Alaska Delinquency Rule 20(d)(1).

[60]     *Cf.* AS 11.41.115(a) (providing an affirmative defense in a murder prosecution "that the defendant acted in a heat of passion, before there had been a reasonable opportunity for the passion to cool, when the heat of passion resulted from a serious provocation by the intended victim").

[61]     *See* 702 P.2d at 649.

[62]     *Amy S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 440 P.3d 273, 282 n.31 (Alaska 2019).

judge would be unwilling to consider an explanation for C.D.'s conduct, should C.D. offer one at a subsequent hearing.[63]

## V.    CONCLUSION

For the reasons stated above, and in our previous order, we VACATED the superior court's waiver order and REMANDED for further proceedings before the original superior court judge.

---

[63]    Because we already remanded the case for further proceedings, we decline to reach C.D.'s argument that the superior court erred by not granting his request to hold its waiver decision in abeyance to allow more time to observe his progress in custody.